(Nos. 32597, 32598.—

TILLIE KLOUDA *et al.*, Appellees, *vs.* THERESA PECHOUSEK, Appellant.

*Opinion filed January 22, 1953.*

AARON SOBLE, and JOHN H. EHARDT, both of Chicago, for appellant.

JACOB STAGMAN, of Chicago, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

These appeals from the circuit court of Cook County present the question whether certain deeds made by Victor Pechousek, Sr., to his children operated to sever joint tenancies existing between the grantor and his wife, Theresa Pechousek, in two separate parcels of real estate situated in Berwyn, Cook County. The circuit court of Cook County concluded that the joint tenancies had been severed and by its decrees directed the registrar of titles of Cook County (the properties having been registered under the Torrens Act) to issue certificates of title in Theresa Pechousek,

widow of Victor Pechousek, Sr., and the six children of Victor Pechousek, Sr., accordingly. From those two decrees the widow, Theresa Pechousek, appeals. The cases, involving the same facts and questions of law, were consolidated for hearing in the trial court and have been consolidated for hearing on appeal.

Proofs were taken before an examiner of title, to whom the causes were referred by the trial court. It appears that one of the properties consisted of a dwelling located on Clinton Avenue in Berwyn. On and prior to June 1, 1950, the date of the deeds in question, title to this property was registered in Victor Pechousek, Sr., and appellant, his wife, as joint tenants. The other parcel of real estate consisted of a commercial property located on Oak Park Avenue, in Berwyn. Title to an undivided one-third interest in that property was registered in the same parties as joint tenants. Appellant was the third wife of Victor Pechousek, Sr. Appellees are his six children by a former marriage.

Early in February, 1950, Victor Pechousek, Sr., accompanied by a daughter, Tillie Klouda (one of the appellees) went to the law office of Geary & Stagman. Pechousek was 76 years of age, of sound mind and in reasonably good health. Pechousek and his daughter, and later Pechousek alone, consulted Judge Geary on that occasion. At the conclusion of the conference, the latter turned the parties over to an office associate. Some months later, on June 1, 1950, Pechousek and the appellee, Tillie Klouda, returned to the office of Geary & Stagman. Deeds had been prepared under the terms of which Pechousek, as grantor, conveyed and quitclaimed to his six children, as joint tenants, his interests in the Clinton Avenue property and the Oak Park Avenue property, respectively. Each conveyance contained the provision: "This deed not to be recorded, and not take effect until my death."

The deeds were read to Pechousek by Judge Geary's associate, who handled the matter on that occasion. Pechou-

sek then signed the deeds and they were acknowledged before a notary public. The attorney asked Pechousek if he wanted to deliver the deeds. Pechousek said that he did and that he understood Mrs. Klouda would receive them on behalf of herself and the other grantees. Thereupon he handed the deeds to Mrs. Klouda, who accepted them and placed them in an envelope. At the time he handed the deeds to his daughter, Pechousek instructed her not to record them until his death. Mrs. Klouda testified that her father said at that time, "Now I gave you everything."

Following that occasion, the deeds were kept by Mrs. Klouda in the safety-deposit box of herself and her husband. Pechousek did not have access to this box. There was no understanding between Mrs. Klouda and her father that she would return the deeds to him, if he requested. Pechousek never asked that they be returned. Mrs. Klouda testified that she showed the deeds to her brothers and sisters.

Pechousek retained possession and control of the properties until his death on January 15, 1952. Thereafter Mrs. Klouda brought the deeds to the law office of Geary & Stagman, and petitions, which culminated in the decrees previously mentioned, were filed to obtain the registration of those deeds.

Did the deeds sever the joint tenancies existing between Pechousek and his wife? It is fundamental that four coexisting unities are necessary and requisite to the creattion and continuance of a joint tenancy; namely, unity of interest, unity of title, unity of time, and unity of possession. Any act of a joint tenant which destroys any of these unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. (*Van Antwerp* v. *Horan,* 390 Ill. 449; *Tindall* v. *Yeats,* 392 Ill. 502.) Thus, a conveyance by one joint tenant of his entire interest destroys the unities of title and interest and works a severance. (*Van Antwerp* v. *Horan.*) In discussing the

essential unity of interest, Blackstone observes: "One joint tenant cannot be entitled to one period of duration or quantity of interest in lands, and the other to a different; one cannot be tenant for life and the other for years; one cannot be tenant in fee, and the other in tail." (2 Blackstone's Commentaries, 181.) The same authority, in discussing the severance of a joint tenancy through destruction of the unity of interest, points out that if there be two joint tenants for life, and the inheritance is purchased by or descends upon either, a severance will result. (2 Blackstone's Commentaries, 185.) A conveyance by one joint tenant of a remainder interest, reserving a life estate, will sever the joint tenancy. (*Clerk* v. *Clerk, 2* Vern. 323.) In each case the unity of interest is destroyed. The interest of one joint tenant no longer remains the same as that of the other.

In order for a deed of one joint tenant to effect a severance, the deed must be validly delivered. (*Klajbor* v. *Klajbor,* 406 Ill. 513.) Delivery is essential to render any deed operative and give it force as a conveyance. (*Riegel* v. *Riegel,* 243 Ill. 626.) In *Heiligenstein* v. *Schlotterbeck,* 300 Ill. 206, it is said: "If a deed lacks delivery,—*i.e.,* if the intended disposition is not to take effect in the lifetime of the grantor but is ambulatory, changeable until the death of the grantor,—such disposition is not operative unless executed in writing in conformity with the Statute of Wills. (*Oswald* v. *Caldwell,* 225 Ill. 224.) With deeds that have been delivered it is different. A deed signed, sealed and delivered becomes at once binding and effective and from thenceforth it is irrevocable and unchangeable. If not delivered it is not effective and is not a deed. The delivery is as necessary to make it a deed as the signing and sealing. In order that a writing in form a deed may be held to be testamentary it must lack delivery. If the instrument in form a deed is delivered it at once becomes binding and effective and cannot thereafter be revoked or

changed. Such an instrument is not testamentary in character. (*Massey* v. *Huntington,* 118 Ill. 80; *Buck* v. *Garber,* 261 id. 378; *Young* v. *Payne,* 283 id. 649; *Moore* v. *Downing,* 289 id. 612; *Patterson* v. *McClenathan,* 296 id. 475.) A deed that has been delivered is valid even though the estate is a future estate. *Nowakowski* v. *Sobeziak,* 270 Ill. 622; *White* v. *Willard,* 232 id. 464."

The rules with respect to delivery of deeds have been often stated. The matter turns largely upon the grantor's intention, to be gathered from surrounding circumstances. Each case must be decided on its own particular facts. (*Hill* v. *Kreiger,* 250 Ill. 408.) Parol evidence is admissible in such a case for the purpose of showing intention. (*Potter* v. *Barringer,* 236 Ill. 224.) It is only necessary that the intention of the grantor be clearly manifest that the deed shall become operative immediately and that he surrenders all control and dominion over it. (*German-American Nat. Bank* v. *Martin,* 277 Ill. 629; *Deitz* v. *Deitz,* 295 Ill. 552.) Where these requirements are met, it is no valid objection that a deed conveys a future interest in real estate. It is permissible for a grantor to convey the fee in his land beginning at a future time, and the time of the commencement of the estate may be fixed at the grantor's death or at any arbitrary date before or after his death, or it may be fixed by reference to such circumstances as the grantor may choose. Subject to the fee thus granted, the grantor will retain the ownership of the land and the right to possess and use it. (*Hudson* v. *Hudson,* 287 Ill. 286.) A delivery of a deed to one of several grantees for the benefit of all is equivalent to delivery to all. *McClugage* v. *Taylor,* 352 Ill. 550.

Appellant first contends that aside from any special considerations arising out of the fact that the titles were here registered under the Torrens Act, there was no valid delivery of the deeds by Victor Pechousek, Sr., in the latter's lifetime. Approached from this viewpoint, it cer-

tainly cannot be said that delivery is negatived by the recital in each deed that it was not to be recorded and not to take effect until the grantor's death. Deeds containing language of this tenor have repeatedly been upheld as present grants of a future interest. (*Shackelton* v. *Sebree,* 86 Ill. 616; *Harshbarger* v. *Carroll,* 163 Ill. 636; *Latimer* v. *Latimer,* 174 Ill. 418; *Hathaway* v. *Cook,* 258 Ill. 92; *Pure Oil Co.* v. *Bayler,* 388 Ill. 331; *Nowakowski* v. *Sobeziak,* 270 Ill. 622; *Bowler* v. *Bowler,* 176 Ill. 541; *Oard* v. *Dolan,* 320 Ill. 371; *Bullard* v. *Suedmeier,* 291 Ill. 400.) In *Shackelton* v. *Sebree,* the deed contained the clause: "This deed not to take effect until after my decease—not to be recorded until after my decease." The contention that such a recital turned the instrument into an invalid testamentary disposition was denied. The deed was held validly delivered in the grantor's lifetime and effective as a conveyance of the fee after his death. In *Harshbarger* v. *Carroll,* a deed contained the recital that it was "only to take effect at the death of the grantor." It was held validly delivered and effective to convey title in fee to the grantee, subject to the reservation of a life estate in the grantor. In *Hathaway* v. *Cook,* the general rule was stated as follows: "Where a deed has been actually delivered to the grantee in the lifetime of the grantor, even though it contains a provision that it is not to take effect until the grantor's death, it will be sustained as a present grant of a future interest."

Neither can it be said that the evidence of surrounding circumstances, considered in its entirety, requires reversal of the trial court's findings (approving those of the examiner) that the deeds were properly delivered. Here, the grantor manually turned the deeds over to Mrs. Klouda at the time they were signed and acknowledged, and the deeds thereafter remained in her possession until the grantor's death. A duly executed deed found in the hands of the grantee raises a strong implication that it has been deliv-

ered and only clear and convincing evidence can overcome that presumption. (*Hathaway* v. *Cook; Harshbarger* v. *Carroll.*) The proofs indicate that the grantor understood, when he handed the deeds to Mrs. Klouda, that he had then surrendered complete dominion and control over them. There was no understanding that he would be entitled to a return of the deeds upon request. He never asked that they be returned. While Mrs. Klouda testified, at the hearing, that she would have given the deeds back to the grantor if he had asked for them, she was clearly not referring to any condition imposed by the grantor or to any understanding, express or implied, between the grantor and herself.

The fact that the grantor intended an irrevocable delivery of the deeds when he turned them over to his daughter on June 1, 1950, is emphasized by the testimony of Judge Geary. This witness testified that when Pechousek consulted him about how the joint tenancy could be destroyed, he advised Pechousek in substance that a will would be of no avail but that the severance could be accomplished by deeds which would operate as a present grant of a future estate; that when such deeds were delivered the interest would be immediately and irrevocably given. This advice of the attorney, followed by the execution of the deeds in the latter's office, indicates that the grantor must have intended to surrender all control and dominion over the deeds, with no right to reclaim them. (*Moore* v. *Downing,* 289 Ill. 612.) Appellant places reliance on the fact that the grantor retained possession and control and exercised acts of ownership over the properties during his lifetime. Where the grantor has reserved a life estate, as was in effect done here, such retention of possession and control are not inconsistent with delivery. *Osgood* v. *McKee,* 343 Ill. 470.

When the whole record is considered, the conclusion is irresistible that unless the circumstance that the titles were

registered under the Torrens Act introduces special considerations into this case, the chancellor's finding that the deeds were duly delivered is amply supported by the proofs.

Appellant contends, however, that the fact that here the titles were registered under the Torrens Act furnishes a decisive reason why the chancellor's finding of delivery in this particular case is erroneous. The recording of a deed to registered land, appellant points out, is without legal force. Hence, it is contended, the proviso in each deed that it was "not to be recorded and not to take effect" until the grantor's death should be construed as if the word "registered" had been used instead of "recorded." On that premise, appellant urges that each deed must be held to have expressed an intention on its face that it should not become effective until the grantor's death because the passing of title to registered land is accomplished only by registration, not by merely making and delivering a deed as in the case of nonregistered land. Appellant cites *People* v. *Mortenson,* 404 Ill. 107, where it is pointed out that conveyancing under the Torrens Act differs in many material respects from the usual method of transferring title and recording instruments affecting title. In that case it is said: "In respect to property not registered under the Torrens Act, title is transferred by the delivery of a deed from the owner to the grantee. The recording of such instrument is not necessary to the validity of the transfer. * * * Under the ordinary system of recording, evidences of title are placed of record, while under the Torrens system the title itself is registered. * * * Under the Torrens Act an instrument, such as a deed or mortgage, does not directly affect the title to registered land, but affects it only by way of contract between the parties constituting authority to the registrar to register the transfer or mortgage, and on completion of the registration the land, estate, or interest, shall become transferred or mortgaged in accordance with the purport of the deed, mortgage or other instru-

ment. Ill. Rev. Stat. 1947, chap. 30, par. 98." Hence, appellant argues that a proviso in a deed to Torrens property that it is not to be registered until the grantor's death amounts to an expression of intention on the face of the instrument itself that it is not to become operative or be effective until the grantor's death.

This argument is predicated, at the outset, on the premise that the word "recorded" which here appears in each deed must be read "registered." If considered in the form in which it actually appears,—"This deed not to be recorded * * *"—the clause doubtless amounts to an unnecessary admonition, but at least it is innocuous and affords no basis for invalidating the instrument under appellant's contention. While a technical word used in a deed has sometimes been given a nontechnical meaning, in a proper case, where that is necessary to uphold the deed's validity, (*Bowler* v. *Bowler*,) yet no case has been found where a word with a technical meaning has been given a different technical meaning in order to invalidate the conveyance. The general rule seems to be that where language of a deed is indefinite and admits of two constructions, an interpretation which will give the deed force will be adopted in preference to one which will make it of no effect. 18 C.J. (Deeds) 256; *Bear* v. *Millikin Trust Co.* 336 Ill. 366.

Here, however, even if the word "recorded" as written in each deed is transformed into "registered," it by no means follows that the language of the deeds is inconsistent with an intention on the part of the grantor that the instruments should be immediately effective and irrevocable as transfers of a future estate to commence at the grantor's death. In *Naiburg* v. *Hendriksen*, 370 Ill. 502, title to real estate had been registered under the Torrens Act in two parties as joint tenants. One made a deed conveying his interest to a third person, who in turn made a deed conveying the interest to Louise Hendriksen, the first grantor's wife. The first grantor died before either deed

had been registered. The surviving joint tenant contended that since the first grantor's deed was not registered before his death, it had no effect on the title to the joint tenancy property, and that upon the grantor's death the surviving joint tenant, therefore, had complete title. This contention was denied. While it was recognized that the unregistered deeds did not operate to transfer legal title, yet it was pointed out that under section 54 of the Torrens Act (Ill. Rev. Stat. 1937, chap. 30, par. 98,) the deed made by the joint tenant in his lifetime did take effect as a contract to convey and this was sufficient in equity to sever the joint tenancy. After stating the general rule that a contract to convey made by a joint tenant will operate, in equity, to sever the joint tenancy, it was said: "The rule announced by these authorities is based on the equitable maxim 'Equity regards as done what in good conscience ought to be done.' Thus, while the appellant as surviving joint tenant has legal title to the whole of the property, as between her and Louise Hendriksen it is subject to the latter's equitable right. Since proceedings under the Torrens Act are governed by the rules of equity, except as the statute otherwise provides, this right will be enforced. *Amundson* v. *Glos,* 271 Ill. 209, 211; *Balzar* v. *Pyles,* 350 Ill. 344." It was further held that the grantor's death was insufficient to terminate the grantee's right to register the deed which had been made by the grantor in his lifetime.

It follows, therefore, that while an unregistered deed to Torrens property will not operate so far as the legal title is concerned until it has been registered, as appellant contends, yet the same deed may take effect immediately in equity as soon as it has been signed, acknowledged and transmitted to the grantee. That is what happened in the *Hendriksen case;* otherwise the deed there could not have severed the joint tenancy because it would not have taken effect in the grantor's lifetime. Since a deed to Torrens property may in this manner take effect at once in equity,

although it is not registered until after the grantor's death, it seems entirely clear that a recital in an instrument that it shall not be registered until after the grantor's death is not incompatible with an intention on the part of the grantor to make an immediate and effective delivery. While the title involved may be a future estate, to commence after the grantor's death, this does not mean that the deed itself cannot be effective at once from the viewpoint of a court of equity. It follows that the recitals in question, when considered together with all the other evidence in the case, do not carry such probative force as to require a reversal of the trial court's findings of due delivery, even though the word "recorded" be given the technical meaning of "registered."

Appellant points out that the grantor did not turn over the duplicate certificates of title to Mrs. Klouda at the time he handed her the deeds. This, appellant argues, evidenced an intention on the part of the grantor that the deeds should not take effect at once. In the case of an ordinary transfer, section 47 of the Torrens Act (Ill. Rev. Stat. 1951, chap. 30, par. 91) provides for the surrender to the registrar of the duplicate certificate of title. Such a surrender is not, however, made indispensable to every transfer. Section 58 covers situations where the duplicate certificate has been lost, mislaid or destroyed (Ill. Rev. Stat. 1951, chap. 30, par. 102) and sections 93 and 94 clearly recognize the broad power of a court of equity to deal with situations where the registrar may have no authority under the terms of the act to make a transfer. (Ill. Rev. Stat. 1951, chap. 30, pars. 130, 131.) Failure of the grantor to provide the grantees with the duplicate certificates of title in the instant case was explained on the ground that such certificates were in the possession of appellant and the grantor did not wish to inform her that the conveyances were being made. Complete harmony was not at all times present in the Pechousek home. It would

add to this domestic unrest if Mrs. Pechousek knew of this conveyance. Mr. Pechousek was the owner of the property involved when he and Mrs. Pechousek were married, and the joint tenancy was the product of her demands. It was Pechousek's desire that his children by a prior marriage share in this property and that his wife be not informed of his plans to accomplish this. This was not inconsistent with an intention on the part of the grantor to effect a valid and irrevocable delivery.

Appellant finally contends that the deeds are invalid for want of acceptance. It affirmatively appears that Mrs. Klouda showed the deeds to the other grantees and that they had actual knowledge of the conveyances. Under such circumstances acceptance by the grantees will be presumed, in the absence of other proof, because of the beneficial nature of the transaction. (*Hill* v. *Kreiger,* 250 Ill. 408.) Here there is no evidence that any of the grantees declined to accept the conveyances. Appellant urges that the presumption of acceptance should not be applied in this case for the reason that the grantees would become personally obligated to pay taxes during the grantor's life, although they would not be entitled to receive any current benefits. Without considering whether a grantee's general obligation with respect to taxes could defeat the presumption of acceptance, the deeds in question each amounted, in equity, to the conveyance of a remainder interest subject to a life estate reserved to the grantor and hence there was no obligation on the grantees to pay taxes during the grantor's lifetime. *Fonda* v. *Miller,* 411 Ill. 74.

Appellant has presented no sufficient grounds for reversal of the decrees. The deeds in question were effectively delivered in the grantor's lifetime and each operated as a contract to convey which, in equity, immediately vested in the grantees, as joint tenants, a remainder interest subject to the life interest of the grantor. The deeds were not invalid because they created joint tenancies in undivided

interests. (Freeman on Cotenancy and Partition (2nd ed.) par. 16, p. 70; *In re Galletto's Estate,* 75 Cal. App. 2d 580, 171 Pac. 2d 152, 156-7.) After the delivery of the deeds on June 1, 1950, the grantor in equity retained only life interests in the properties which had previously been held by appellant and himself in joint tenancy, whereas appellant's interests were held in fee. This operated in equity to destroy the unity of interest and the existing joint tenancies between the grantor and appellant were thereupon severed. The decrees of the circuit court properly directed issuance of the certificates of title on that basis.

*Decrees affirmed.*