MINONK STATE BANK, Adm'r of the Estate of Agnes Grassman, Deceased, Plaintiff-Appellant, v. IDA GRASSMAN, Defendant-Appellee.—(BERNICE GERDES et al., Defendants.)

Fourth District    No. 17240

Opinion filed March 3, 1982.—Rehearing denied March 26, 1982.

Westervelt, Johnson, Nicoll & Keller, of Peoria, and Riely & Riely, of Minonk (Jeffrey W. Jackson, Brian J. Meginnes, and James A. Riely, of counsel), for appellant.

Mark J. McGrath, of Mackinaw, guardian ad litem, for appellee.

JUSTICE MILLS delivered the opinion of the court:

We lay to rest today an antiquated and obsolete legal fiction—the "strawman."

Here is a question of first impression: Can a joint tenant unilaterally sever that joint tenancy by conveying her interest to herself as a tenant in common without the use of an intermediary?

Our answer is yes.

We reverse.

Plaintiff, the administrator of the estate of Agnes Grassman, appeals from a declaratory judgment order declaring defendant, Ida Grassman, sole surviving joint tenant of real property which, by reason of a 1938 deed, the deceased and defendant had owned in joint tenancy. The precise question before this court is whether the unilateral attempt by one joint tenant to terminate that tenancy by conveying her interest from herself as a joint tenant to herself as a tenant in common is effective to sever the joint tenancy.

Agnes (decedent) and Ida Grassman (defendant) were sisters. In 1938, Gustav Grassman executed a deed under which Agnes, Ida, and Frieda Grassman, a third sister, became owners in joint tenancy of the parcel of real estate. Frieda died in 1972, leaving Agnes and Ida as surviving joint tenants.

One week after the death of Frieda, defendant executed a deed conveying this parcel of property from herself as a joint tenant to herself as a tenant in common. The deed recited that this action was for the sole purpose of dissolving any and all rights of survivorship as between the parties to the deed executed by Gustav Grassman. It is undisputed that Agnes was unaware of what Ida had done.

On February 16, 1977, Agnes died. Her will, dated March 13, 1963, was admitted to probate with Minonk State Bank as administrator. The will disposes of all of Agnes' personal property but makes no mention of any disposition of real property. Subsequent to admission of the will to probate, Minonk State Bank filed this declaratory judgment action requesting a declaration by the court that Ida and Agnes held the property in tenancy in common by reason of severance of the joint tenancy by Ida

through execution of the 1972 deed. Defendant, who is now incompetent, argued through her guardian ad litem that the 1972 deed she executed was ineffective and did not operate to destroy the joint tenancy so that she is the sole owner of the property by virtue of her having survived Agnes.

Before discussing this question, which has not heretofore been decided in Illinois, a review of the common law theory of joint tenancy, as well as its modern adaptations seems appropriate since other jurisdictions which have decided this question have reached diametrically opposed results on exactly the same facts.

Joint tenancies existed as early as the 13th century. Born in the feudal relationships pervasive in that era, it became a favored form of estate in land because of the vital importance of the tenure, the preeminent characteristic of real property in the feudal ages in which land or tenements were held in subordination to some superior. (2 American Law of Property §6.1, at 3-4 (1952); Black's Law Dictionary 1317 (5th ed. 1979).) It was in the interest of the lord that each feudal holding be a single feud continuing until the death of the survivor. (2 American Law of Property §6.1, at 3 (1952).) The rationale for the rule was given as follows:

> "The common law favored title by joint tenancy, by reason of this very right of survivorship. Its policy was averse to the division of tenures, because it tended to multiply the feudal services, and weaken the efficacy of that connection." 4 Kent's Commentaries 361 (14th ed. 1896).

As a consequence, grantees took an estate as though they together constituted one person. Since all were seized as a fictitious entity, four classic unities developed which, albeit artificially, demonstrated their community of interest which required that individual interests be equal in all respects. (2 American Law of Property §6.1, at 4 (1952).) The common law unities were, of course: *time, title, interest*, and *possession*. In essence, the common law joint tenancy required that the several tenants have one and the same interests accruing by one and the same conveyance, commencing at the same time and held by one and the same undivided possession. *Kane v. Johnson* (1947), 397 Ill. 112, 73 N.E.2d 321.

Despite the demise of the feudal system, courts nevertheless continued to scrutinize joint tenancy questions by resort to a simple determination of whether the particular unities were present in a given situation. Though the philosophical concept supporting the application of the unities to a particular situation had become archaic, few seriously questioned the continued use of these mechanical rules even though the common law doctrine had lost its vitality. The unities took on a life unto themselves. Form triumphed over substance and the unities became "necessary and requisite" to the creation and continuance of a joint tenancy. See *Klouda v. Pechousek* (1953), 414 Ill. 75, 110 N.E.2d 258.

As one writer has aptly noted, however, "the requirement of the four unities necessarily arose as a result of the basic concept [of joint tenancy] rather than as a prerequisite to the creation of the estate." (2 American Law of Property §6.1, at 5 (1952).) The unwillingness or inability of courts to recognize this distinction led inevitably to anomalous results. Rather than question the efficacy of the unities, other legal fictions such as the "strawman" transaction sprang into being to perpetuate a long dead feudal concept.

As a result, by 1827, the legislature had passed a statute reversing the common law presumption in favor of joint tenancies. Though joint tenancies were not abolished or forbidden, their creation now depended upon compliance with the statute. (*Mette v. Feltgen* (1894), 148 Ill. 357, 36 N.E. 81.) Likewise, passage of other legislation such as the "Married Woman's Law" in 1861 (1861 Ill. Laws 143), made certain other aspects of the common law regarding tenancies by the entirety obsolete. At common law, a husband and wife were but one person. This formed the basis for the common law notion that a deed to husband and wife created in them a tenancy by the entirety which could not be severed. The basis for this rule ceased, however, with the adoption of the "Married Woman's Law" which provided that conveyances to husband and wife created in them a tenancy in common unless the instrument expressly declared that the estate was a joint tenancy. *Mittel v. Karl* (1890), 133 Ill. 65, 24 N.E. 553; *Lawler v. Byrne* (1911), 252 Ill. 194, 96 N.E. 892.

Despite these legislative enactments, which did not specify that the unities need be observed with strict precision, courts uniformly and tenaciously relied upon them to determine whether a joint tenancy had been created irrespective of the express intent of the parties. *Deslauriers v. Senesac* (1928), 331 Ill. 437, 163 N.E. 327.

*Deslauriers* is the focal point for the litigation in this case. In *Deslauriers* the wife owned a parcel of property prior to the marriage. After the marriage she and her husband executed a deed by which they purported to transfer the property from her to themselves in joint tenancy. The wife died intestate, and the husband entered a contract to sell the property to third parties. Before the purchasers became entitled to a deed, the husband died. His will was admitted to probate, and the purchasers of the property indicated they were ready to pay the balance of the purchase price. However, they refused to accept the deed upon the advice of an attorney who doubted that a joint tenancy had been created. The husband's executor filed suit against the heirs of the wife praying that the court decree that the deed created a joint tenancy and that as the surviving husband, he had been the sole owner of the property.

The supreme court, relying strictly upon common law principles, held that a person cannot convey or deliver to himself that which he

already possesses. The unities required that for every transaction there be a grantor and a grantee. Hence, no joint tenancy was created by a deed from a wife to the husband and wife as joint tenants. Such a deed created only a tenancy in common.

*Deslauriers* was decided in 1928 and remained the law until 1953 when "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1953, ch. 76, par. 1(b)) was amended. Under the amendment, joint tenancies could be created "notwithstanding the fact that the grantor is or the grantors are also named as a grantee or as grantees in said instrument of grant or conveyance." As one court noted, this amendment changed the common law with respect to the four unities by relaxing the statutory provision that an estate with all the effects of a common law joint tenancy could be created through a conveyance from a grantor directly to himself and another, without the intervention of a third party. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) The court in *Frey* also pointed out that courts should adopt a more liberal and practical view of these sorts of common transactions in light of the public policy change.

With these preliminary observations in mind, we turn to the instant appeal. Plaintiff argues that the legislative change in 1953 dispensing with the "strawman" requirement in the creation of joint tenancies should be applied with equal force to the rules governing severance of joint tenancies. Defendant argues that since the 1953 amendment applied strictly to creation of joint tenancies, it has no application to severance questions. Therefore, *Deslauriers'* reliance upon common law principles is still controlling.

We cannot accept defendant's contention that different rules should be applied to the creation and severance of joint tenancies in this situation. In the first instance, we note that adherence to a rule which would make it more difficult to destroy joint tenancies than to create them, runs contrary to the basic concept of joint tenancy, including that at common law. 2 American Law of Property §6.2 (1952).

At common law, severance of any one of the unities destroyed the joint tenancy. It is clear that the preeminent question was the intention of the parties either to enter or maintain the joint tenancy relationship. The unities, for better or worse, served to show that this intent was present when the estate was created. Likewise, the subsequent unilateral act of one joint tenant, with or without the knowledge or consent of the other joint tenants, severing the joint tenancy just as vividly demonstrated that the parties no longer intended to continue the relationship. The crucial point is that the nature of the grantor and grantee in the transaction severing the joint tenancy is immaterial to the question of intention. The

*intent to sever* was the *controlling issue*, although the technical and largely ceremonial aspects of the "strawman" transaction were observed.

Illinois has recognized any number of ways in which joint tenancies can be severed: mortgaging an interest to a stranger (*Lawler v. Byrne* (1911), 252 Ill. 194, 96 N.E. 892); deeding the property to a stranger (*Szymczak v. Szymczak* (1923), 306 Ill. 541, 138 N.E. 218); a contract between the joint tenants to sever (*Duncan v. Suhy* (1941), 378 Ill. 104, 37 N.E.2d 826; *In re Estate of Coleman* (1979), 77 Ill. App. 3d 397, 395 N.E.2d 1209); involuntary conveyance by a sheriff divesting one tenant of his estate following a judicial sale (*Jackson v. Lacey* (1951), 408 Ill. 530, 97 N.E.2d 839; *In re Estate of Woodshank* (1975), 27 Ill. App. 3d 444, 325 N.E.2d 686); conveyance of a remainder interest while reserving a life estate (*Klouda v. Pechousek* (1953), 414 Ill. 75, 110 N.E.2d 258); conveyance from one tenant to another tenant (*Jackson v. O'Connell* (1961), 23 Ill. 2d 52, 177 N.E.2d 194); executing a contract to convey the property (*Naiburg v. Hendriksen* (1939), 370 Ill. 502, 19 N.E.2d 348); transfer to a trustee (*Flynn v. O'Dell* (7th Cir. 1960), 281 F.2d 810). If one examines those cases, it is obvious that courts have been inclined to allow severance in any variety of ways once the intent to sever has been demonstrated. This observation all but militates a conclusion that severance should not be governed more strictly than creation of joint tenancies.

Only one other jurisdiction supports defendant's position that the strict common law unities must be observed and a "strawman" transaction must be the intermediary through which a joint tenant can convey property to herself in tenancy in common. In *Krause v. Crossley* (1979), 202 Neb. 806, 277 N.W.2d 242, the Nebraska Supreme Court, after considering the common law requirements for joint tenancy, concluded that neither the common law nor Nebraska statutes indicated any intention to permit severance by conveyance from one joint tenant to himself if he was both the grantor and the grantee. Citing *Deslauriers*, the court refused to allow a person to convey or deliver to himself that which he already possessed.

One other jurisdiction also adhered to this rationale for a time. In *Clark v. Carter* (1968), 265 Cal. App. 2d 291, 70 Cal. Rptr. 923, the California Court of Appeals also cited *Deslauriers* and held that a grantor could not make himself the grantee by conveying the estate to himself. That holding was predicated solely on common law principles that each transaction must have two parties.

Twelve years later, that decision was reviewed and reversed by the same appellate court in *Riddle v. Harmon* (1980), 102 Cal. App. 3d 524, 162 Cal. Rptr. 530. After noting that State legislation had amended the civil code to allow direct transfers of property in the creation of joint

tenancies without the fiction of the "strawman," the court concluded that there was little virtue in steadfastly adhering to cumbersome, futile legal requirements. Since there were any number of rituals available to unilaterally terminate a joint tenancy, common sense, as well as legal efficacy, dictated that a joint tenant should be able to accomplish directly what he or she could otherwise achieve indirectly by use of elaborate legal fictions. In view of the clear intention to sever (which is not disputed in this case), the California court discarded the "archaic" rule that one could not "enfeoff" himself. A similar result was reached in *Hendrickson v. Minneapolis Federal Savings & Loan Association* (1968), 281 Minn. 462, 161 N.W.2d 688.

We consider the reasoning of the court in *Riddle* to not only be persuasive but compelling. If an individual can grant to himself and another individual property in joint tenancy, there is no reason why the same party should not be able to sever the joint tenancy by conveying an estate to himself. The individual has done with one piece of paper what otherwise would have required two. Moreover, as the court noted in *Riddle*, acknowledging this ability is not an extension of new rights to the parties. Allowing one party to destroy the joint tenancy by executing a deed from himself to himself merely dispenses with an outmoted charade which is of dubious legal and practical significance. We hold that a joint tenant may unilaterally sever a joint tenancy without the use of an intermediary.

Finally, we note that in at least one Illinois case, the court appears to have tacitly approved the severance of a joint tenancy in which the same person acted as both grantor and grantee. In *Klouda v. Pechousek* (1953), 414 Ill. 75, 110 N.E.2d 258, the grantor owned property in joint tenancy with his wife. He deeded part of that property to his daughters, retaining a life estate, with remainder to his daughters. The court stated that a conveyance by one joint tenant of a remainder interest, while reserving a life estate, severed the joint tenancy since the unity of interest was destroyed.

Conveyance of a life estate and reservation of a remainder violates the rule that one cannot grant to himself something which he already possesses. If a person reserves a life estate, he has not completely divested himself of ownership nor has the grantee been invested with complete title. For the foregoing reasons, the judgment of the Woodford County circuit court is reversed and cause is remanded.

Reversed and remanded for proceedings consistent with this opinion.

GREEN, P. J., and TRAPP, J., concur.