**Vernon Lee FINNEY,**
**Plaintiff/Appellant,**

**v.**

**Alexander P. SMITH, Trustee,**
**Defendant/Appellee.**

**No. 2:91cv840.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 7, 1992.

Steven L. Brown, Norfolk, Va., Robert G. Byrum, Shames & Byrum, Chesapeake, Va., for plaintiff/appellant.

Alexander P. Smith, Alexander P. Smith & Associates, P.C., Norfolk, Va., for defendant/appellee.

## ORDER

DOUMAR, District Judge.

Plaintiff/Appellant, Vernon Lee Finney, filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. After the bankruptcy court, per Judge Hal J. Bonney, denied Finney's discharge, he then sought to convert his petition to one under Chapter 11. The trustee objected, and the court denied the debtor's motion to convert. Plaintiff then noted this appeal.

### I. Procedural History

Plaintiff/Appellant Finney filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code, requesting a discharge of his debts pursuant to 11 U.S.C. § 727, on January 14, 1991. Finney was represented by Robert G. Byrum, Esq., throughout the proceedings in the bankruptcy court. Alexander P. Smith, Esq., was appointed to act as trustee.

Subsequently, it came to light that the debtor had concealed his transfer of three parcels of real property to Donna J. Beaver, the woman he was dating, during the year prior to his filing for bankruptcy. Al-

though the debtor asserted in his Statement of Financial Affairs and Schedules that the property in question was transferred on January 3, 1990—more than one year prior to his filing—he admitted that the deeds of gift were not executed until May 22, 1990, less than one year prior to his filing. *See* Transcript of Proceedings before Alexander P. Smith, Trustee (Feb. 14, 1991) at 9–10. Sometime *prior to* June 3, 1991, these three parcels were reconveyed to the debtor at the request of the trustee.

After this reconveyance, the debtor moved to voluntarily dismiss his petition. The trustee opposed this motion on the ground that the debtor had attempted to deceive the court by making material misrepresentations as to his assets both in his bankruptcy petition and at his section 341 hearing. Stating that "the Debtor has failed to establish sufficient cause to justify the dismissal of his case over the objection of the Chapter 7 Interim Trustee; and for good cause shown," the court dismissed the debtor's motion for voluntary dismissal. Order of June 24, 1991.

Based on the debtor's initial transfer of property to Beaver and his false statements incident thereto, Glen D. Barnes, a creditor, filed a complaint to deny discharge on April 15, 1991. Following a trial on August 1, 1991, the court sustained Barnes' objections to the debtor's discharge, thereby denying the entire discharge. *See* Order of Aug. 21, 1991. In so ruling, the court made the following findings of fact:

> The Defendant–Debtor ... filed for relief under Chapter 7 ... on January 14, 1991. On approximately May 22, 1990, within one year before the date of the filing of the petition, the Debtor transferred parcels of real estate property to Donna J. Beaver. The May 22, 1990 transfers were not disclosed in the Debtor's Statement of Financial Affairs and Schedules.... On February 14, 1991, the Debtor again declared under oath at his Section 341 First Meeting of Creditors that he had made no transfer of property during the year immediately

> preceding the filing of this Chapter 7 Petition.

Order of Oct. 17, 1991 (paragraph numbers omitted). The court then concluded that "[g]ood cause exists to deny Debtor's discharge.... [P]ursuant to 11 U.S.C. Section 727(a)(2), the Debtor with intent to hinder, delay or defraud his creditors transferred real property within one year of the date of the filing of the petition." *Id.* The debtor then filed a motion for reconsideration and rehearing, which the court denied. Order of Aug. 21, 1991.

On September 5, 1991, the debtor filed a motion under § 706(a) to convert his Chapter 7 petition to a proceeding under Chapter 11. In support of his motion, the debtor stated that he had not previously converted his case under Chapter 11, 12 or 13, and that he was eligible to be a debtor under Chapter 11. The trustee objected on the ground that the debtor had fraudulently transferred three pieces of real property and had been denied a discharge under Chapter 7 as a result. The trustee stated that "to grant the Debtor all the powers of a Trustee under § 1107 of the Bankruptcy [C]ode would be like putting a fox in charge of a hen coop." Trustee's Response to Motion to Convert Case under Chapter 11 (Sept. 9, 1991). By order entered October 24, 1991, the bankruptcy court denied the debtor's motion to convert: "[It appears] to the Court on equitable grounds that justice would not be served by permitting the Debtor to convert his case to a Chapter 11 proceeding; and for good cause shown...."

Plaintiff then noted this appeal. He also applied to the court for leave to add Steven L. Brown, Esq., as counsel for the debtor. Both parties filed briefs, and appellee trustee filed a reply brief. Arguments were heard on January 29, 1992, at which time the district court took the matter under advisement.

Appellant argues that the debtor has a one-time absolute right to convert his Chapter 7 case to one under Chapter 11 and that any alleged improper acts by the debtor—including those resulting in a denial of discharge under Chapter 7—are irrelevant to

the issue of conversion. Second, the debtor asserts that the issue of whether a trustee may be appointed to oversee the debtor's Chapter 11 reorganization was not addressed by the bankruptcy court and therefore is not properly before the district court. Appellant claims that all disputed issues are issues of law and, as such, are subject to *de novo* review by this court.

Not surprisingly, appellee's arguments differ significantly. Appellee argues that the debtor's right to convert under § 706(a) is not absolute, but rather is limited by the court's broad equitable powers to prevent an abuse of process under § 105(a). Appellee also asserts that whether there has been an abuse of process is a question of fact and, as such, may not be overturned by the district court unless it is clearly erroneous. Finally, the trustee asserts that the court has the authority to appoint a trustee under Chapter 11 in cases involving fraudulent conduct.

## II. Analysis

■ The parties to this appeal dispute both the factual findings and legal conclusions reached by the bankruptcy court. In reviewing the bankruptcy court's decision on appeal, this court must apply a clearly erroneous standard of review to findings of fact, and a *de novo* standard to conclusions of law. *See, e.g., United States Trustee v. Kinser*, 128 B.R. 417, 418 (W.D.Va.1991). In addition, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination." *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987) (citations omitted); *see United Va. Bank v. Slab Fork Coal Co. (In re Slab Fork Coal Co.)*, 784 F.2d 1188, 1191 (4th Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). Although this court could properly make findings of fact by removing the bankruptcy court's jurisdiction over Finney's case, it does not choose to do so.

■ The issue presented by appellant is whether debtor had an absolute right to convert. This is a legal question subject to *de novo* review. Based upon an examination of the caselaw and relevant statutory provisions, this court holds that the debtor does have a right to convert his case to one under Chapter 11; however, in certain limited circumstances, conversion may be denied. While a debtor has a right to convert to Chapter 11, he has no right to *remain* in Chapter 11. If reconversion from Chapter 11 to 7 is appropriate under the circumstances, then denial of the initial conversion from Chapter 7 to 11 also would be appropriate because the law does not require a useless act.

Based upon an examination of the record, this court determines that the bankruptcy court may have been justified in immediately reconverting the case, via § 1112(b), to one under Chapter 7, thus in effect denying the right to convert. Since the bankruptcy court made only limited findings of fact, however, this court is unable to determine whether a reconversion is appropriate under settled principles of law and thus whether the denial of conversion is appropriate. Accordingly, this court REMANDS the case for additional findings of fact as discussed herein.

### A. The Debtor's Motion to Convert to Chapter 11

■ Under § 706(a),

The debtor may convert a case under [chapter 7] to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1307, or 1208 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a) (West 1979 & Supp. 1991). The legislative history reveals the policy of the provision: "that the debtor should always be given the opportunity to repay his debts." H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6336; S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880.

In denying the debtor's motion to convert, the bankruptcy court evidently invoked the provisions of § 105(a), holding

that "on equitable grounds ... justice would not be served by permitting the Debtor to convert his case...." In its entirety, § 105(a) provides the following:

The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a) (West Supp.1991). Although there is no caselaw directly on point in this circuit, most other courts considering the issue have held that the terms of § 706(a) are absolute and may not be modified subject to § 105(a). Under the dominant approach, then, the right of conversion is viewed as absolute and the debtor's alleged fraudulent conduct and refusal to cooperate are irrelevant to his right to convert. *See, e.g., In re Kleber*, 81 B.R. 726, 727 (Bankr.N.D.Ga.1987); *In re Jennings*, 31 B.R. 378, 380 (Bankr.S.D.Ohio 1983).

This court is aware of only two decisions holding that this "absolute" right of conversion may be limited or denied under § 105(a). In *In re Jones*, 111 B.R. 674, 680 (Bankr.E.D.Tenn.1990), the court held that the debtor, who had already been granted a Chapter 7 discharge, could not convert to Chapter 13 unless the court first revoked his discharge, which could only be done with the approval of all interested creditors. The facts of *In re Calder*, 93 B.R. 739, 740 (Bankr.D.Utah 1988), are more similar to, but also more egregious than, the facts surrounding Finney's bankruptcy. In *Calder*, the Utah bankruptcy court held that "[b]ecause of the unique set of circumstances present in this case, denial of the debtor's motion [to convert] will insure that congressional intent will be satisfied." *Id.* The court emphasized that the debtor was himself a bankruptcy attorney who had personally been a debtor in three prior Chapter 13 cases, two of which had been dismissed due to bad faith. The court also found that the debtor had made only mini-

mal effort to repay his creditors during this and all previous filings. Finally, it found that the debtor knowingly had made a false oath, thereby precluding a discharge, and that he sought to convert to Chapter 13 only after his Chapter 7 discharge had been denied. In light of these facts and pursuant to § 105, the court denied the debtor's motion to convert "in order to prevent the abuse of the bankruptcy process." *Id.*

Although § 105(a) does grant the bankruptcy court general equitable powers to issue necessary and appropriate orders, these powers "are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988), *cited with approval in United States Dep't of the Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1475 (4th Cir.1990). The express terms of § 706(a) state, without qualification, that "[t]he debtor may convert a case ... *at any time*" if it has not previously been converted. 11 U.S.C.A. § 706(a) (emphasis added). It also states that "[a]ny waiver of the right to convert is unenforceable." *Id.* In the absence of precedent to the contrary in the Fourth Circuit, this court must follow the text of § 706(a), which gives the debtor the unqualified right to convert his Chapter 7 petition to one under Chapter 11 where there is no question of a reconversion.

*B. Reconversion to Chapter 7*

Even if the debtor does have an absolute right to convert his case from one chapter to another, however, he does not necessarily have the right to keep it in a particular chapter. *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1161 (5th Cir.1988). In *Texas Extrusion Corp.*, for example, the Court of Appeals for the Fifth Circuit held that, although the debtor had an absolute right to convert her Chapter 11 case to a Chapter 7 case under § 1112(a), the bankruptcy court also had the right to reconvert the case to one under Chapter 11 pursuant

to the terms of § 706(b). *Id.* (citing 4 L. King, Collier on Bankruptcy ¶ 1112.03 (15th ed. 1991)). Similarly in the case at bar, if the bankruptcy court had granted the debtor's motion to convert to a Chapter 11 reorganization, the provisions of § 1112(b) may have permitted the court to reconvert the case to one under Chapter 7.

The relevant portion of § 1112(b) states that "on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under [chapter 11] to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause...." 11 U.S.C.A. § 1112(b) (West 1979 & 1991 Supp.). In order to determine the applicability of the statute to the case at bar, this court must examine three issues: (1) whether the bankruptcy court may convert a case *sua sponte* to Chapter 7; (2) whether adequate cause existed for a reconversion in this case; and (3) whether an immediate reconversion is appropriate, in effect denying the initial conversion.

### 1. Sua Sponte Reconversion

■ Clearly a court may convert a debtor's Chapter 11 case to one under Chapter 7 on its own motion. Although the text of § 1112(b) refers only to a request made "by a party in interest or the United States trustee," § 105 states

> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a) (West Supp.1991) (added by amendment in 1986). Unfortunately, Congress provided no illuminating comments to assist courts in applying this section. 5 L. King, *supra*, ¶ 1112.03. However, the amendment is clear enough on its face that the court may act *sua sponte* under sections that refer explicitly only to requests made by parties in interest, *see, e.g., In re H.B.A. East, Inc.,* 87 B.R. 248,

262 n. 30 (Bankr.E.D.N.Y.1988), which by its terms applies to § 1112(b). *Hayes v. Production Credit Ass'n of Midlands,* 955 F.2d 49 (10th Cir.1992) (unpublished) (WL, CTA10 database).

### 2. Adequate Cause for Reconversion

Section 1112(b) allows the court to convert a Chapter 11 petition to one under Chapter 7 "for cause." This section "then sets out a non-exhaustive list of circumstances in which conversion or dismissal might be appropriate, including the manifest absence of a 'reasonable likelihood of rehabilitation,' the debtor's apparent 'inability to effectuate a plan [of reorganization],' or an 'unreasonable delay by the debtor that is prejudicial to creditors.'" *Carolin Corp. v. Miller,* 886 F.2d 693, 699 (4th Cir.1989) (quoting 11 U.S.C. § 1112(b)(1) to (3)); *see* H.R.Rep. No. 595, 95th Cong., 1st Sess. 405–06 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6361–62; S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5903. Based on these justifications and several other specific provisions of the Bankruptcy Code, the Court of Appeals for the Fourth Circuit has concluded that "a generalized 'good faith filing' requirement appears implicit in § 1112(b)" and " 'supports the construction that a debtor's lack of "good faith" may constitute cause for dismissal [or conversion] of a petition.'" *Carolin Corp.,* 886 F.2d at 698–99 (quoting *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984)); *see In re Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir.1986); *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985).

The court also set forth the standards by which a bankruptcy court may determine whether a filing has been made in good faith. Although the facts in *Carolin* involved a threshold dismissal as opposed to a conversion after a denial of discharge, § 1112(b) contemplates either conversion or dismissal. Accordingly, the same good faith standard applies. *See* § 1112(b); *In re Winslow,* 123 B.R. 641, 643 (D.Colo. 1991), *aff'd mem.,* 949 F.2d 401 (10th Cir. 1991); *Farley v. Coffee Cupboard, Inc. (In*

re Coffee Cupboard, Inc.), 119 B.R. 14, 18 (E.D.N.Y.1990).

After examining the caselaw in other circuits, the Court of Appeals adopted a test requiring that "both objective futility and subjective bad faith be shown in order to warrant dismissals for want of good faith in filing." Carolin, 886 F.2d at 700–01. The court did acknowledge, however, that the "proof [of these two elements] inevitably will overlap" and that ultimately, "a totality of circumstances inquiry is required." Id. at 701.

### a. Subjective Bad Faith

■ In order to dismiss or convert a petition under § 1112(b), the court first must find that the debtor acted in subjective bad faith. Under the facts in Carolin, for example, the debtor corporation was bought out the day before the scheduled foreclosure sale of its single asset, and it filed for bankruptcy protection under Chapter 11 only hours before the scheduled sale. Id. at 704. The court recognized that this was an entirely permissible "entrepreneurial motive" if the purchaser intended to rehabilitate a struggling business through an infusion of capital and was willing to provide for the adequate protection of creditors. Id. The court went on, however, to detail a series of facts that "belie[d] the possibility of any such purpose." Id.

■ Although there is no evidence in the case at bar that the debtor engaged in this same type of isolation tactic, the evidence does support the bankruptcy court's finding that the debtor acted in subjective bad faith in filing and converting his case. As stated earlier, the bankruptcy court found as a fact that the debtor transferred property with the intent to defraud his creditors. Indeed, this was the basis for the bankruptcy court's denial of his Chapter 7 discharge. See Order of Oct. 17, 1991. It was only after the court had denied his discharge and his motion for rehearing that the debtor sought to convert his petition to one under Chapter 11.

■ This court HOLDS as a matter of law that the bankruptcy court properly may consider the debtor's conduct in Chapter 7 when assessing his good faith in seeking to file under Chapter 11. Under the terms of various provisions of the Bankruptcy Code,

> Conversion of a pending liquidation does not create any break in the case; on the contrary, continuity is preserved, so that the date of the original chapter 7 petition is the date of cleavage for the determination of such questions as the avoidance of preferences, the validity of liens and the like. The reorganization or repayment plan case is deemed to have been originally commenced as of the date of the filing of the first petition initiating a case under the Code.

4 L. King, supra, ¶ 706.02 (citations and footnotes omitted). Based on such provisions, then, this court holds that any behavior in which the debtor engaged after filing his original Chapter 7 petition is relevant to the court's sua sponte reconversion.

On this basis, this court HOLDS that the bankruptcy court's finding of subjective bad faith was not clearly erroneous.

### b. Objective Futility

■ Under the Carolin test, a finding of subjective bad faith, standing alone, is insufficient to justify conversion. In order to convert, the court also must find that the debtor's prospects for reorganization are objectively futile. Under the objective prong of the good faith in filing test, conversion or dismissal may be justified where the court finds that " 'there is no going concern to preserve ... and ... no hope of rehabilitation....' " Id. at 701 (quoting In re Little Creek Development Co., 779 F.2d 1068, 1073 (5th Cir.1986)).

The facts in Carolin present a classic case of what many courts call the "one-asset debtor," a debtor who shows little to no prospect of financial rehabilitation. Id. at 704–05; L. Ponoroff & F. Knippenberg, The Implied Good Faith Filing Requirement: Sentinal of an Evolving Bankruptcy Policy, 85 Nw.U.L.Rev. 919 (1991). The single asset Chapter 11 case is typified by "a debtor whose primary asset consists of troubled collateral ... [and who] lacks

most or all of the customary trappings of a regular and significant business enterprise—namely unsecured creditors, employees, customers and inventory." Ponoroff & Knippenberg, *supra* (citing *Carolin*, 886 F.2d 693, as a prime example of the single asset debtor case). "The absence of any ongoing business, especially when combined with a lack of any apparent equity in the debtor's single asset make the prospects for a successful reorganization [in such a case] slim indeed." *Id.* This model also frequently includes a recent transfer of the single asset in order to protect other productive assets from financial drain. *Id.*

■ The record in the case at bar may or may not support a finding of objective futility in regard to the debtor's conversion to Chapter 11. Excepting the three parcels of rental property that the debtor transferred to Donna Beaver and omitted from his petition, the debtor's Chapter 7 petition makes clear that he has only one main asset, his personal residence, which is encumbered by two mortgages totalling a sum greater than its market value. The debtor also readily admits that the restaurant business in which he was a silent partner is now totally defunct. Based on this information, it appears to this court that the debtor's likelihood of rehabilitation is questionable. Because the bankruptcy court made no findings of fact regarding the objective prospects for the debtor's rehabilitation under Chapter 11, however, the district court must REMAND for further findings of fact on this issue.

3. Timing of Reconversion: The Due Process Notice and Hearing Requirement

■ As discussed above, the bankruptcy court clearly may reconvert Finney's case from Chapter 11 back to Chapter 7 in accordance with § 1112(b) and the standards set forth by the Fourth Circuit in *Carolin Corp. v. Miller.* This court now HOLDS, as a matter of law, that a court also may deny a debtor's motion to convert from Chapter 7 to Chapter 11 in the first place in accordance with those same standards. To hold otherwise would raise form over substance and create useless litigation. As discussed below, such a holding clearly comports with the dictates of the due process clause, the specific provisions of § 1112(b), and the basic tenets of the Bankruptcy Code.

■ Section 1112(b) states that an involuntary conversion to Chapter 7 may be effected only after notice and a hearing. In the case at bar, the bankruptcy court conducted a hearing on the debtor's motion to convert to Chapter 11 on October 17, 1991, but did not conduct any subsequent hearings in regard to reconversion to Chapter 7. The Bankruptcy Code makes clear, however, that the judge has a certain degree of discretion in satisfying the "notice and hearing" requirements. Section 102, for example, requires only "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances...." 11 U.S.C.A. § 102(1)(A) (West 1979). Based on this provision, the Court of Appeals for the Fifth Circuit has held that "[w]here a matter has already been adequately argued before the bankruptcy judge, and the judge determines that no further hearings are necessary, then the debtor's due process rights are not violated when the judge decides the issue without further hearings." *Central Sullivan Plaza I, Ltd. v. Bancboston Real Estate Capital Corp. (In re Sullivan Central Plaza I, Ltd.)*, 935 F.2d 723, 727 (5th Cir.1991) (citations omitted); *Texas Extrusion Corp.*, 844 F.2d at 1161. As a result, the bankruptcy court need not conduct additional hearings if it is able to make any necessary findings of fact based on the knowledge it has derived from the earlier proceedings in this case.

■ In addition, there is no requirement that the court wait until the debtor has filed his proposed plan for reorganization before dismissing or converting the petition under § 1112(b). *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296, 297–98 (11th Cir.1987) (holding that, because taint of bad faith in filing extends to any subsequent reorganization proposal, Congress could

not have intended to delay creditors' right to dismissal past time of filing). Instead, "the ability of the bankruptcy courts to inquire into that critical matter *at the very threshold* would seem indispensable to proper accomplishment of the basic purposes of Chapter 11 protection." *Carolin,* 886 F.2d at 698 (citations omitted) (emphasis added); *see In re Southern Int'l Co.,* 126 B.R. 223, 226 (Bankr.E.D.Va.1991). The Fourth Circuit did note in *Carolin* that "[d]ecisions denying access at the very portals of bankruptcy, before an ongoing proceeding has begun to develop the total shape of the debtor's situation, are inherently drastic and not lightly to be made." *Carolin,* 886 F.2d at 700. While acknowledging the Court of Appeals' warning, this court emphasizes that the debtor's situation is well known to the bankruptcy court due to the proceedings already conducted under Chapter 7. Accordingly, an immediate reconversion may be appropriate if made in conjunction with certain additional findings of fact regarding the objective futility of reorganization.

In addition to reconverting the case immediately to Chapter 7, a court also may deny a debtor's motion to convert in the first place, in accordance with the above-mentioned standards. An analogy to the common law theory of owning property as tenants by the entirety makes clear the propriety and practicality of this approach. In both instances, "common sense, as well as legal efficacy, dictate[ ] that [one] should be able to accomplish directly what he or she could otherwise achieve indirectly by use of elaborate legal fictions." *Minonk State Bank v. Grassman,* 103 Ill. App.3d 1106, 59 Ill.Dec. 802, 806, 432 N.E.2d 386, 390 (1982) (citing *Riddle v. Harmon,* 102 Cal.App.3d 524, 162 Cal.Rptr. 530 (1980)).

At common law, tenancy by the entirety was a unique form of property ownership "by which husband and wife ... [held] land conveyed or devised to them by a single instrument...." *Woolard v. Smith,* 244 N.C. 489, 94 S.E.2d 466, 469 (1956) (quoting

*First Nat'l Bank v. Hall,* 201 N.C. 787, 161 S.E. 484, 485 (1931)). "By reason of their legal unity by marriage, the husband and wife together take the whole estate as one person. Neither has a separate estate or interest in the land, but each has the whole estate." *Id.* (quoting *Thompson on Real Property* § 1803). In addition, as owners by the whole, tenants by the entirety enjoy the right of survivorship. *Id.* At common law, the spouses had to acquire their joint interests at the same time; if they did not, a different form of ownership resulted, under which the parties had no right of survivorship. *Kane v. Johnson,* 397 Ill. 112, 73 N.E.2d 321, 324 (1947). On this basis, courts initially held that a husband, owner of Blackacre, could not create a tenancy by the entirety by deeding Blackacre to himself and his wife. Because the husband already had an ownership interest in Blackacre, he and his wife technically did not acquire their interests at the same time. *Haynes v. Barker,* 239 S.W.2d 996, 997 (Ky.1951).

In order to circumvent this requirement, the practice developed whereby Blackacre's owner would convey the property to a "straw man," who would then reconvey to the grantor and his spouse as tenants by the entirety. *Id.* In time, however, most courts [1] concluded that parties "should ... be able to do directly that which they could undoubtedly do indirectly through the device of a straw man." *Ebrite v. Brookhyser,* 219 Ark. 676, 244 S.W.2d 625, 628–29 (1951); *see Woolard,* 94 S.E.2d at 469; *c.f. Minonk State Bank,* 59 Ill.Dec. at 803, 432 N.E.2d at 387 (holding that a joint tenancy may be severed without using the legal fiction of a straw man).

In the bankruptcy context, allowing the judge to deny the debtor's motion to convert from Chapter 7, if combined with findings of fact in keeping with § 1112, obviates the need for the Chapter 11 straw man. Such an approach neither renders § 706(a) meaningless nor denies the debtor his right to convert under Chapter 7; in

---

1. In some states, this change was the result of legislative rather than judicial action. *See, e.g.,* Md.Real Prop.Code Ann. § 4–108(b) (1974);

*Bruce v. Dyer,* 309 Md. 421, 524 A.2d 777, 782 (1987).

order to deny the § 706(a) motion, the judge still must find subjective bad faith and objective futility as required under § 1112(b). Such an approach is fully in keeping with accepted principles of statutory construction: that "when a court interprets multiple statutes dealing with a related subject ..., the statutes are *in pari materia* and must be considered together." *Linquist v. Bowen*, 813 F.2d 884, 888 (8th Cir.1987) (citations omitted). Consequently,

> Title 11's various provisions should not be viewed in isolation. Instead, their interpretation should reflect the interplay between all of its different parts, so that the Bankruptcy Code can operate as a coherent whole. The meaning given to any one portion must be consistent with the remaining provisions of the Bankruptcy Code.

*In re Depew*, 115 B.R. 965, 969 (Bankr. N.D.Ind.1989).

This approach also comports with the objectives of the Bankruptcy Code as a whole, which are "to achieve a just and equitable distribution of the estate to the creditors and to relieve the honest debtor of his debts...." *In re Epstein*, 39 B.R. 938, 941 (Bankr.D.N.M.1984) (citing *Lewis v. Fitzgerald*, 295 F.2d 877, 878 (10th Cir. 1961)). In addressing the Code's second goal, the bankruptcy court has already denied the debtor a discharge under Chapter 7 based on a finding that he was not "honest." [2] If the bankruptcy court also finds that the likelihood of rehabilitation under Chapter 11 is objectively futile, a denial of the debtor's motion to convert to Chapter 11 would meet the Code's first goal of providing a just and equitable distribution of the estate to the creditors.

### C. Appointment of a Trustee in Chapter 11 Proceedings

Appellant has asserted that the appointment of a Chapter 11 trustee was not addressed by the bankruptcy court and, as such, there are no findings of fact or conclusions of law to be reviewed by this court. Appellee does not directly dispute these assertions; he states only that "the court has the authority to order the appointment of a trustee in a chapter 11 case upon the request of a party in interest for cause including fraud...." Appellee does not, however, state what court has this authority.

Under § 1104, appointment of a Chapter 11 trustee may be made by the court "on request of a party in interest or the United States trustee, and after notice and a hearing." 11 U.S.C.A. § 1104(a) (West 1979 & Supp.1991); *see In re Microwave Products of America, Inc.*, 102 B.R. 666, 670–71 (Bankr.W.D.Tenn.1989). In his response to the debtor's motion to convert, appellee trustee requested that he be appointed to serve as Chapter 11 trustee if the debtor's motion to convert were granted. Because the bankruptcy court denied the debtor's motion to convert, it did not have occasion to consider the trustee's request.

If the bankruptcy court finds on remand that a reorganization attempt is objectively futile, it will deny the debtor's motion to convert to Chapter 11, thereby mooting the question concerning appointment of a trustee in Chapter 11. If the bankruptcy court determines that reorganization is *not* objectively futile, however, the trustee's motion will be ripe for consideration by the bankruptcy court.

### III. Conclusion

This court HOLDS as a matter of law that a bankruptcy court, in its discretion, may deny a debtor's motion to convert from Chapter 7 to 11 where it finds that the debtor has acted in subjective bad faith and that the Chapter 11 proceeding would be objectively futile. In this instance, this court cannot conclude whether the bankruptcy court's denial of the debtor's motion to convert was proper. Although the court found that the debtor acted in subjective bad faith, it made no findings of fact regarding the objective likelihood of rehabilitation under Chapter 11. Accordingly, this

---

**2.** As discussed above, the court determined that the debtor transferred real property within one year of the date of the filing of his petition "with [the] intent to hinder, delay or defraud his creditors...." Order of Aug. 21, 1991.

matter is REMANDED to the bankruptcy court for additional findings of fact on the aforementioned issue.