**In re Rainsford J. WINSLOW and Winifred W. Winslow, Debtors.**

**Civ. A. No. 90–K–663.**
**Bankruptcy No. 89–B–247–E.**

United States District Court,
D. Colorado.

Feb. 5, 1991.

Rainsford Winslow and Winifred Winslow, pro se.

Christina C. Bauer, Brush, Colo., Asst. County Atty., Philip A. Pearlman, Robert J. Dyer, Denver, Colo., E. Ord Wells, Fort Morgan, Colo., Morgan County Atty., for Morgan County.

### MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is an appeal from a bankruptcy court order granting a motion to convert this bankruptcy case from a Chapter 11 reorganization to a Chapter 7 liquidation. Debtors Rainsford and Winifred Winslow (Debtors) raise five arguments in favor of reversal. Having considered each, I affirm the bankruptcy court's conversion order.

#### I. *Facts.*

Debtors filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code on January 9, 1989.[1] On May 3, 1989, Morgan County, Colorado, a judgment creditor, moved for conversion of the Debtors' bankruptcy case from Chapter 11 to Chapter 7. The motion was joined by Keith D. Williams, et. al. (the Williams Group), also a judgment creditor and the largest creditor of the estate. Morgan County and the Williams Group alleged

---

**1.** This is the Debtors' third bankruptcy filing. Their previous two petitions, filed in 1984 and 1985, were dismissed.

that the Debtors' bankruptcy case was filed for the improper purpose of avoiding the enforcement of state court judgments entered against the Debtors. They further argued that the Debtors had demonstrated no reasonable likelihood of reorganization, that they had failed to comply with other Code requirements, and that conversion of the case was in the best interests of the creditors. The Debtors opposed the motion.

The initial hearing on the motion to convert was held on October 6 and October 18, 1989. At the conclusion of the hearing, the court continued the motion to convert the case, to be reset upon motion by the creditors. It then ordered the Debtors to file a reorganization plan and disclosure statement on or before December 1, 1989, to segregate estate and non-estate funds and to place estate funds in a separate bank account. The precise findings by the bankruptcy court hearing are not in the record because the debtors have not designated any transcripts from the proceedings below as part of the record on appeal.[2]

On November 23, 1989, the Debtors filed a disclosure statement and plan of reorganization. The disclosure statement and plan indicated that the primary assets of the estate consisted of several parcels of real property with an estimated combined value of over one million dollars. The Debtors proposed to sell this property by financing the sales price themselves and accepting periodic payments from the purchasers which would then be put into escrow and eventually paid out to the creditors.

Shortly after the Debtors filed their plan and disclosure statement, Morgan County moved to reset the hearing on conversion of the case to Chapter 7, arguing that the plan was not proposed in good faith. Morgan County, the Williams Group, and the Acting United States Trustee (Trustee) each filed written objections to the Debtor's disclosure statement. The following

summarizes the central objections to the Debtors' statement and plan:

(1) Debtors listed as assets of the estate judgments in their favor which did not exist;

(2) Debtors failed to disclose creditors with judgments against them;

(3) Debtors failed to explain that, pursuant to a state court judgment, they act as constructive trustees of the water-related easements and appurtenances, water system, sewer system and other appurtenances relating to estate property and that beneficial ownership of these interests is held by third parties;

(4) Debtors continued to contest the validity of state court judgments in favor of Morgan County and the Williams Group;

(5) Debtors provided no analysis of how the real property was valued, how they intended to liquidate it or how payment to creditors would be implemented;

(6) Debtor's plan contained no provision for the payment of taxes or bankruptcy fees.

See Record, Vol. I Docs. 299, 301a, 309. The court held a hearing on the motion to convert and the adequacy of the Debtors' disclosure statement on February 7, 1990. The minutes from those proceedings show that the court again ordered the Debtors to file an amended disclosure statement and reorganization plan by February 21, 1990. The hearing was continued to March 7, 1990.

On February 16, 1990, the Debtors filed their amended disclosure statement and reorganization plan. Morgan County, the Williams Group and the Trustee again filed objections, substantially the same as those outlined above. The March 7 hearing on the conversion issue was continued due to inclement weather and was rescheduled to March 30, 1990. In its order resetting the hearing, the bankruptcy court outlined a nonexclusive list of the more serious deficiencies apparent in the Debtors' most re-

---

**2.** On December 5, 1990, I denied Morgan County's motion to dismiss this appeal based on the Debtors' failure to order a transcript. In that order, I ruled that the Bankruptcy Rules did not require designation of the transcript, but that an appellant's failure to do so would make it nearly impossible for him to demonstrate error on appeal. *See* Order, filed December 5, 1990, at 2.

cent disclosure statement and reorganization plan, many of which mirrored the above criticisms of the creditors and the Trustee. *See* Brief of Appellee Morgan County, Colorado, Exhibit A at 2–4. Finally, the court stated:

> The law certainly recognizes that it is possible for a debtor to propose a plan for the payment of his creditors by an orderly liquidation of the estate property. Thus, the general concept of the Plan proposed by the Debtors is one recognized both by the Code and the courts to be acceptable. A plan of reorganization is a contract between the Debtors and their creditors. Such a contract must contain precise terms, including those explicitly required by 11 U.S.C. § 1123 and those required for confirmation pursuant to 11 U.S.C. § 1129, and those terms must be set forth with sufficient legal precision to enable the parties to understand their position and have rights which are legally enforceable. The conceptual plan filed by the Debtors wholly fails to meet such requirements.

*Id.* at 3–4.

On March 26, 1990, the Debtors amended their disclosure statement and reorganization plan. Again, the Williams Group filed objections going to the lack of detail in the plan, unsubstantiated allegations as to real property values and other inaccuracies and vague areas. On March 30, 1990, the bankruptcy court held a hearing on the adequacy of the plan and the motion to convert the case. During the hearing, the Debtors attempted to introduce testimony and exhibits purportedly relating to the value of estate property and their ability to carry out the plan, but the court refused to hear testimony or receive the exhibits into evidence. Ruling from the bench, the court then granted the motion to convert the case from Chapter 11 to Chapter 7. It entered a short written order to this effect on April 3, 1990. The Debtors appeal this order, and the matter is now at issue.

II. *Merits of Conversion Order.*

■ Section 1112 of the Bankruptcy Code permits the bankruptcy court, at the request of any party in interest, to convert a case under Chapter 11 to one under Chapter 7 or to dismiss the case entirely, whichever is in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b). Conversion or dismissal under § 1112 must be "for cause." *Id.* Section 1112 contains a nonexclusive list of circumstances constituting cause, including:

> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court; [or]
>
> (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan....

*Id.* § 1112(b)(1)–(5). In addition to the grounds listed in § 1112, a number of courts have permitted conversion when the debtor's petition has not been filed in good faith. *See In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 270 (Bankr.N.D. Ill.1990) (citing cases), *aff'd*, 119 B.R. 149 (N.D.Ill.1990); *e.g., In re Block K Assocs.*, 55 B.R. 630 (Bankr.D.Colo.1985). The bankruptcy court's decision to convert or dismiss a case under § 1112(b) is a matter in its discretion. *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989); *see also Aune v. Reynders*, 344 F.2d 835, 840 (10th Cir. 1965) (bankruptcy court has discretion to choose between conversion or dismissal under former Act). Its findings of fact are not to be disturbed unless clearly erroneous; its conclusions of law are reviewed *de novo. Hall*, 887 F.2d at 1043.

The Debtors present five arguments why the bankruptcy court's order converting their case from Chapter 11 to Chapter 7 was in error: (1) the bankruptcy judge was prejudiced and should have disqualified himself from the case, (2) Morgan County and the Williams Group's claims against the estate are void and invalid, (3) the Debtors had no notice that the issue of conversion would be considered in the March 30 hearing, (4) the Debtors should have been

permitted to present evidence at the March 30 hearing, and (5) there was no cause to order conversion of the case.

■ On June 6, 1990, the Debtors filed a motion for mandamus action in this case, requesting that Bankruptcy Judge Charles E. Matheson be disqualified on grounds of bias and prejudice. In an order entered on August 16, 1990, the court denied mandamus relief, reasoning

> The Winslows' petition for mandamus relief is based on unsubstantiated allegations of bias and inappropriate inferences from adverse rulings by Judge Matheson. "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Hinman v. Rogers*, 831 F.2d [937 at] 939 [10th Cir. 1987]. Judge Matheson did not abuse his discretion in denying the Winslow's motions to disqualify. In view of the foregoing, the Winslows have not satisfied their burden of demonstrating a clear and undisputable entitlement to mandamus relief.

Order at 4–5. Judge Matsch's ruling on the motion for mandamus relief accurately and thoroughly addresses the disqualification issue and is the law of the case. *See Bromley v. Crisp*, 561 F.2d 1351, 1363 (10th Cir.1977) ("generally an appellate court will not depart from a rule of law established on an earlier appeal deciding the same issues"), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978). The Debtors' renewed attack on Judge Matheson's impartiality is rejected.

The Debtor's second argument is similarly without merit. As they have done many times in pleadings before this court, the Debtors argue that the judgments held by the two largest creditors of the estate, Morgan County and the Williams Group, are void because of the bias of the state court judge issuing the judgments and because certain state appellate judges were improperly appointed. Let us put this matter to rest.

■ The validity of the Morgan County and Williams Group claims is not at issue here. That matter was the subject of a separate proceeding in this court, *Winslow v. Williams Group*, Civil Action No. 89–K–1811. In a well-reasoned opinion entered May 8, 1990 in that case, Judge Matsch considered and rejected each of the Debtors' arguments respecting the validity of the state court judgments, affirming the bankruptcy court's ruling allowing these claims. That case is currently on appeal to the Tenth Circuit. Accordingly, unless and until the Debtors obtain a reversal of the district and bankruptcy courts' rulings allowing the Morgan County and Williams Group's claims, the Debtors are precluded from collaterally attacking those rulings in this case.

■ Regardless, assuming for the sake of argument alone that the Debtors did not receive a fair trial in front of Judge Leh, the only place to correct this error is in the Colorado state courts. Colorado equally requires the appellant to file a transcript as part of the record on appeal. The Debtors argue that it would have been futile to file a transcript in connection with their state court appeal because of the material inaccuracies and omissions in it. Whether that transcript constituted a full and accurate record of the trial court proceedings was for the Colorado Court of Appeals to determine. It is not the province or function of this court to do so. *See also Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186, 189 (6th Cir.1986) (similarly rejecting the debtor's attempt to collaterally attack a final state court judgment in a bankruptcy proceeding).[3]

---

**3.** During oral argument, the Debtors raised an additional issue relating to the state court judgments and the enforceability of Morgan County and the Williams Groups' claims. The Debtors contend that they have obtained a supersedeas bond in connection with the state court judgments and that they are entitled to a stay of the judgments in federal court under Fed.R.Civ.P. 62(f).

"[I]n federal court a party who seeks the protection of a stay under Rule 62(f) should file with the court, with notice to the plaintiff, his request for the stay." 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2907 (1973). The Debtors acknowledge that they did not

The Debtors' third argument is that they received no notice that the March 30 hearing would address the conversion issue. The record belies this contention. On March 8, 1990, the court provided all parties with notice that the March 7 hearing on the motion for conversion was rescheduled because of adverse weather conditions and that "the hearing on the Debtors' Amended Disclosure Statement and *the continued hearing on the motions by the Creditors to convert this Chapter 11 case* will be reconvened on Friday, March 30, 1990 at 9:30 a.m." Brief of Appellee Morgan County, Colorado, Exhibit A at 4 (emphasis added). Furthermore, the Debtors conceded that they received this notice in their reply brief. *See* Reply to Appellees Morgan County/Williams Group at 2, 3. Therefore, the bankruptcy court's order cannot be reversed on the grounds that the Debtors received no notice of the conversion hearing.

The Debtors' fourth contention is that they were denied due process in the March 30 hearing because the bankruptcy court prevented them from examining witnesses and introducing exhibits during the proceedings. The Debtors advanced the same argument in a motion for relief for judgment under Rule 60(b)(4).[4] Looking at the pleadings filed in connection with this issue, it is clear that the Debtors rely on a *second* order entered by the bankruptcy court on March 8, 1990 giving notice of a hearing to be held on March 30, 1990 on different matters: the Debtor's motion for permission to continue a state court appeal and on the creditors' objection to the Debtors' motion to disallow a $1,200 claim. This notice explained the procedure to be

followed if any party desired to introduce exhibits or call witnesses to testify at the hearing on those issues. *See* R.Vol. I, Doc. 331. The Debtor's apparently believed that these instructions likewise applied to the hearing on the conversion issue.

█ The Debtors' confusion likely stems from the fact that the above hearing was set for the same date and time as the hearing on the motion for conversion. However, in the notice of hearing for the motion for conversion, the court gave no indication to the parties that they would be permitted to introduce evidence or examine witnesses on that issue, nor was it required to do so. In *A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.)*, 749 F.2d 146, 150 (2d Cir.1984), *cert. denied*, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985), the Second Circuit held that a full evidentiary hearing was not required on a motion to convert where the debtors were on notice that conversion was being considered and there were a series of hearings over several months in which creditors of the estate and the trustee gave their views on the central issues relating to conversion.

Like *Tiana Queen*, the Debtors were given four opportunities to present a confirmable plan. Each time they submitted a plan, the court held a hearing and addressed, in detail, the deficiencies in their submissions as suggested by Morgan County, the Williams Group and the Trustee in their objections. Therefore, since the conversion order was entered in compliance with the procedural requirements of § 1112(b), there has been no denial of due process.[5] *See id.* at 150 n. 1.

---

bring this issue to the bankruptcy court's attention, and the record does not indicate whether they filed a request for stay with the bankruptcy court. Consequently, it is inappropriate for me to consider this matter in the context of this appeal. Arguments or issues not raised before the lower court ordinarily should not be addressed on appeal, especially where the record below is incomplete. *See Gundy v. United States*, 728 F.2d 484, 488 (10th Cir.1984); *Walter E. Heller & Co. v. Langenkamp (In re Tureaud)*, 59 B.R. 973, 975 (N.D.Okla.1986).

4. I denied that motion on December 5, 1990 because a motion under Rule 60 must be ad-

dressed to the court that issued the order to be corrected, in this case the bankruptcy court.

5. Moreover, the exhibits that the Debtors attempted to introduce would have done little to improve their chances of having their plan and disclosure statement approved. The tendered exhibits consist of advertisements for the sale of property in Fort Morgan and in Morgan Heights, information on the economic development of Fort Morgan, a sales contract for vacant estate property, copies of recorded deeds, plats, assessments and other information relating to water rights and litigation involving Mor-

Finally, the Debtors claim that there was no "cause" to convert their bankruptcy case from Chapter 11 to Chapter 7 because their disclosure statement and reorganization plan conformed to the requirements of the Bankruptcy Code. Morgan County and the Williams Group disagree, citing numerous misstatements and deficiencies in the Debtors' disclosure statement and reorganization plan and the fact that the Debtors were given four opportunities to correct these deficiencies. They further argue that the Debtors have filed this bankruptcy action in bad faith.

In *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989), the Tenth Circuit upheld the dismissal of a bankruptcy case under § 1112(b)(2) for failure to file an acceptable plan, "whether the reason for the debtor's inability to file is its poor financial condition, the structure of the claims against it, or some other reason." In that decision, the court addressed the debtors' argument that their disclosure statement contained complete information. The court noted that information disclosed in the statement must meet the standard set forth in § 1125(a)(1) of the Code. It must be

> adequate information ... of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan....

11 U.S.C. § 1125(a)(1). Information contained in the debtors' statement in *Hall* failed to meet this standard, as does that of the Debtors in this case.

A review of Judge Matheson's comments on the deficiencies of the plan in his March 8 order and Debtors' most recent plan and disclosure statement demonstrates that the Debtors failed to address his concerns or make meaningful progress toward formulating a viable plan, despite repeated opportunities to do so. While the Debtors made some progress toward defining in greater detail how the plan would be implemented, it was still lacking in many areas. It included little information on how their property was to be marketed, how its value was determined, and what would happen if the Debtors' sales expectations were not met. Their amended disclosure statement contained many of the same inaccuracies and inconsistencies repeatedly referenced by the court, creditors and the Trustee. The Debtors' persistent failure to propose a workable plan in repeated bankruptcy filings caused an unreasonable delay in the administration of the estate which was prejudicial to creditors. Conversion of the debtors' case was therefore justified under § 1112(b)(2), for "inability to effectuate a plan," and under § 1112(b)(3), for "unreasonable delay by the debtor that is prejudicial to the creditors."

Alternatively, the bankruptcy court's order converting the Debtor's case is affirmed on the grounds that this bankruptcy petition was not filed in good faith. To convert or dismiss on this basis, the court should consider, among other things, "(1) the timing of the filing of the petition, (2) the motive of the debtor in filing the petition, and (3) the accuracies or inaccuracies of the debtor's assertions in its petition and schedules." *See In re Block K Assocs.*, 55 B.R. 630, 633 (Bankr.D.Colo.1985).

Here, the record below and on appeal is replete with evidence that the Debtors' sole purpose in filing this bankruptcy was to avoid the state court judgments issued against them. Their amended petition states: "The purpose in doing this is to make sure that enforcement proceedings in the Colorado Court system do not take place while the Winslows are in the protection of the U.S. Bankruptcy Court." R.Vol. I, Doc. 4a. This is the third bankruptcy petition the Debtors have filed within a five-year period; the previous two petitions were dismissed on similar grounds. Finally, as noted above, the Debtors disclosure

---

gan Heights. Even had the court accepted these documents into evidence and heard testimony on them, as discussed below, there still would

have been major shortcomings in the Debtors' disclosure statement and reorganization plan.

statement and reorganization plan continue to mischaracterize the extent and nature of their assets and the claims against them. There is ample justification for dismissal based on bad faith.

### III. *Conclusion.*

Since the transcript of the final conversion hearing has not been included in the record on appeal, I have no indication which of the above-mentioned grounds the bankruptcy court relied on in converting the Debtors' case. However, the Debtors have the burden on appeal of demonstrating error by the bankruptcy court. Those portions of the record which were designated clearly indicate that the bankruptcy court's action was justified. The inability to effectuate a reorganization plan, unreasonable delay prejudicial to creditors and filing of a petition in bad faith each constitute "cause" for converting a case under § 1112(b). Conversion of the Debtor's case from Chapter 11 to Chapter 7 was in the best interest of the estate and the creditors, and the bankruptcy court did not abuse its discretion in taking this action.

The judgment of the bankruptcy court granting Morgan County's motion to convert this case is AFFIRMED.

The Debtors have also filed a "motion to halt attorney/professionals money banquet." The matters raised in the motion are outside the scope of this appeal. Therefore, the motion is DENIED.