In re Rainsford J. WINSLOW, et al., Debtors.

Civ. A. Nos. 94–K–104, 94–K–679, 90–K–2245 and 91–K–1428. Bankruptcy No. 89–00247 E.

United States District Court, D. Colorado.

Aug. 21, 1995.

Rainsford J. Winslow, Fort Morgan, CO, pro se.

Arthur Lindquist–Kleissler, Solomon & Lindquist–Kleissler, Denver, CO, for C. Gail Hunter, Chapter 7 Trustee.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me are four matters arising out of the Rainsford J. Winslow bankruptcy proceedings. Civil Action Nos. 94–K–104 and 94–K–679 are appeals brought by Mr. Winslow challenging various actions of the bankruptcy court. Consolidated Civil Action Nos. 90–K–2245 and 91–K–1428 are contempt proceedings brought by the trustee in bankruptcy, C. Gail Hunter ("Trustee"), against the Winslows. Upon Mr. Winslow's request in No. 94–K–679, I abated these cases during Mrs. Winslow's illness and for some time after her death. I lifted the abatement order on July 12, 1995 and now issue my rulings. I treat the cases together because they involve similar issues and concerns.

## I. *THE BANKRUPTCY APPEALS*

These *pro se* appeals arise from Winslow's efforts to stop the sale of certain real property and to challenge a stipulated settlement between the Trustee and a class of creditors that has held an unsatisfied judgment against Winslow since 1979. In 94–K–104, Winslow appeals from a December 29, 1993 order of the bankruptcy court authorizing the Trustee to sell certain Fort Morgan property that is an asset of the bankruptcy estate. In 94–K–679, Winslow appeals from a March 15, 1994 order of the bankruptcy court requiring the funds obtained by the Trustee on the sale of the property to be distributed to a class of creditors holding judgments against Winslow from a 1979 state court case (Civil Action No. 79–CV–97) tried in Morgan County, Colorado (the "Morgan County case").

■ These appeals rehash issues repeatedly raised and repeatedly denied in over 165 cases Winslow has filed since 1983.[1] Winslow's goal in filing these actions has been the nullification of the judgments entered against him by Judge Leh in the Morgan County case. As grounds, Winslow has accused Judge Leh, the Morgan County case class plaintiffs, various bankruptcy court judges, this court, the court of appeals, or all of them of varying degrees of ineptitude, bias, and fraud. The instant appeals are no exception.

In 94–K–104, Winslow claims the bankruptcy court lost jurisdiction over the proceedings in March 1990 for "failing to follow the requirements" of converting Winslow's Chapter 11 bankruptcy plan to a Chapter 7 liquidation. He complains that the price for which the Trustee was authorized to sell the property "is far too little" and that he was denied any meaningful opportunity to be heard on the issue. *See* Issues and Record on Appeal (filed Jan. 7, 1994). In his Verified Opening Brief, Winslow claims the Morgan County judgment creditors have perpetrated fraud on the court by failing to "revive" or secure their claims against the estate. He also asks that I "require" the U.S. Attorney's Office to prosecute the Trustee, her counsel and others for violation of 18 U.S.C. §§ 152, 1001, and that I void a default judgment entered by Judge Brooks in a separate adversary proceeding in the bankruptcy court.

In 94–K–679, Winslow again asserts the bankruptcy court lost jurisdiction over the bankruptcy proceedings for having "wrongfully established the conversion of the Winslow Chapter 11 case to Chapter 7," and also asserts Judge Leh "lost" jurisdiction over the Morgan County case by certifying the Williams class "without due process of law" and by refusing to disqualify himself. *See* Statement of Issues and Designation of Record (filed July 31, 1995).[2]

The propriety of the bankruptcy court's decision to convert Winslow's Chapter 11 case was addressed in detail in my opinion in *In re Winslow,* 123 B.R. 641 (D.Colo.1991) (No. 90–K–663). There, I found the Winslows' inability to effectuate a reorganization plan, their unreasonable delay detrimental to creditors, and their bad faith in filing the Chapter 11 petition to avoid judgment in the Morgan County case constituted "cause" for conversion under 11 U.S.C. § 1112(b). *Id.* at 647. I also addressed Winslow's repeated contention that the conversion proceedings were conducted improperly and lacked due process. Adopting the analysis in *A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc.,* 749 F.2d 146, 150 (2d Cir.1984), *cert. denied sub*

---

1. To date, Winslow has initiated over 165 actions in the state and county courts of Colorado, this court, the Tenth Circuit Court of Appeals, and the United States Supreme Court. *See Board of County Comm'rs of Morgan County v. Winslow,* 862 P.2d 921 (Colo.1993); *Winslow v. Hunter,* 17 F.3d 314, 315 n. 2 (10th Cir.1994) (listing the various actions filed in the federal court of appeals); *Winslow v. Romer,* 759 F.Supp. 670, 678 (D.Colo.1991) (summarizing cases filed with the District Court since 1983). *See also Winslow v. Williams Group,* 132 B.R. 1016 (D.Colo.1991)

(Kane, J.) (bemoaning the litigiousness, disorganization and repeated disregard for the authority of the court displayed by Winslow in filing repetitious motions for reconsideration and postjudgment relief without cause and setting forth conditions to be met for filing such motions in the future).

2. Winslow has yet to file his opening brief in this appeal and recently filed a motion for extension of time to do so. The request is denied as moot because, as I explain below, I am dismissing the 94–K–679 appeal.

*nom. DeMarco v. A. Illum Hansen, Inc.*, 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985), I held that an evidentiary hearing was not required on a motion to convert where the debtors were on notice that conversion was being considered and there had been at least four hearings at which they presented their views on central issues relating to conversion. 123 B.R. at 645. The Tenth Circuit affirmed my analysis on all points, concluding the "undisputed facts support the bankruptcy court's conversion order." *Winslow v. Williams Group*, 949 F.2d 401 (Table), 1991 WL 261696 (10th Cir.1991) (No. 91–1047) (unpublished disposition).

The merits of Winslow's contentions regarding Judge Leh's conduct in the Morgan County case and the failure of the Williams class to perfect their claims also have been addressed repeatedly and rejected. The issues have been reduced to final judgments binding on this court. *See Winslow v. Williams Group*, 134 B.R. 949, 953, 957 (D.Colo.1990) (citing *Winslow v. Williams*, 749 P.2d 433, 436 (Colo.App.1987) (state appeals court concluded (1) Winslow failed to address the issue on direct appeal and could not attack collaterally the Morgan County case judgments by challenging Judge Leh's impartiality; and (2) no evidence of order requiring "perfection" of judgment creditors' claims and Winslow failed to rebut creditors' presumptively valid proofs of claim)), *aff'd* 935 F.2d 278 (10th Cir.1991); *see also In re Winslow*, 123 B.R. at 644–45 (revisiting Judge Matsch's opinion in 89–M–1811 in a futile attempt to put these issues "to rest"). Each of these rulings was conclusive, final, and constitutes the law of the case. Under the doctrine of *stare decisis*, Winslow is precluded from attempting to relitigate or re-open them by filing ostensibly new actions such as the instant appeals.

The remaining issues raised in Winslow's brief have no relation to the matters on appeal and are without merit.[3] For the foregoing reasons, Winslow's appeals in 94–K–104 and 94–K–679 are dismissed with prejudice.

■ Winslow's appeals are dismissed for the additional reason that they were filed without leave of the court. In 1991, I found Winslow's *pro se* filings to be so voluminous, repetitive, and lacking in substance that I enjoined him from proceeding as a proponent of any claim in the United States District Court for the District of Colorado without representation by counsel, unless leave to proceed *pro se* was first obtained from the court. *See Winslow v. Romer*, 759 F.Supp. 670, 678 (D.Colo.1991) (outlining the specific procedures for obtaining the court's permission to proceed *pro se* ). In 1994, the Tenth Circuit followed suit, imposing similar restrictions on Winslow filings in the court of appeals. *See Winslow v. Hunter*, 17 F.3d at 315.[4]

Notwithstanding this court's order, Winslow filed the present appeals without representation by counsel and without seeking leave to proceed *pro se*. The admonition against such conduct in *Winslow v. Romer* could not have been more clearly stated. For this additional reason, Winslow appeals 92–K–104 and 92–K–679 are dismissed.

---

**3.** There is no basis in law or in fact for overturning Judge Matheson's December 29, 1993 Order on grounds the sale price of the Morgan County property was "too low." I note Winslow failed even to address the issue in his Verified Opening Brief. I have no authority to order the U.S. Attorney's Office to prosecute anyone and Winslow's request that I do so is denied. The default judgment entered by Judge Brooks is not before me on this appeal and will not be considered. I refer Winslow to my opinion in *Hunter v. Winslow*, 133 B.R. 533 (D.Colo.1991), however, where these issues were addressed at length.

**4.** The Colorado state courts, too, have limited Winslow's right to appear *pro se*. In *Board of County Comm'rs of Morgan County v. Winslow*, the Colorado Supreme Court enjoined the Winslows from appearing pro se "in any state court and from further appearing pro se in any state court action now pending in which they seek affirmative relief." 862 P.2d at 924 (counting 162 separate proceedings initiated by Winslow in the district courts of Morgan, Washington, and Weld Counties; the county courts of Morgan and Washington Counties; the Colorado Court of Appeals; the United States District Court for the District of Colorado; the Tenth Circuit Court of Appeals; and the United States Supreme Court, most of which were dismissed summarily).

## II. *THE CONTEMPT CITATIONS*

In Civil Action Nos. 90–K–2245 and 91–K–1428, Winslow seeks *de novo* review of two civil contempt orders entered by the bankruptcy court against him and his wife on December 4, 1990 and June 24, 1991. In the December 1990 order, the bankruptcy court found that the Winslows had failed to produce records and property of the bankruptcy estate and held them in contempt. After a hearing, the court ordered sanctions to be imposed if the Winslows failed to produce specified books, records and property. These sanctions included the possibility of imprisonment "until such time as the Debtors, or either of them, evidence their willingness and intention to purge themselves of their contempt." Findings and Orders on Order to Show Cause at 12. The Winslows filed written objections to the court's ruling, which were construed as effective to stay the contempt order pending this court's review under Bankruptcy Rule 9033. The pleadings were forwarded to me and the matter assigned Civil Action No. 90–K–2245.

In the 1991 order, the bankruptcy court found the Winslows had leased water rights belonging to the estate and had converted $250 in proceeds for their own benefit. After a hearing, the bankruptcy court again held the Winslows in contempt and ordered sanctions, including the possibility of imprisonment, if the Winslows failed to disgorge the $250 belonging to the estate. For a second time, the Winslows filed written objections which effectively stayed the contempt order, the pleadings were forwarded to me, and the matter was assigned Civil Action No. 91–K–1428.[5]

In a Memorandum Opinion and Order dated September 4, 1991, I found the threat of incarceration inherent in the bankruptcy court's contempt orders entitled the Winslows to representation. I remanded the cases first to the bankruptcy court, and then to a Magistrate Judge of this court for the appointment of counsel. The Winslows rejected the various counsel appointed to represent them as "unsatisfactory" and, nearly a year later, chose to proceed *pro se* with advisory counsel only. *See* Winslow's Verified Opening Brief at 1, 8, 8A, & 9.[6] After many collateral motions and requests for extension of time, briefing finally was complete on June 13, 1994. Thus, with the abatement granted because of Mrs. Winslow's illness, Mr. Winslow has avoided the sanctions ordered by the bankruptcy court for more than four years.

### A. *Standard of Review*

■ In my September 4, 1991 Memorandum Opinion and Order, I determined Bankruptcy Rule 9033(d) governed my review of

---

5. Due to the perceived continuing interference with her administration of the bankruptcy estate and the delays regarding the civil contempt proceedings, the Trustee initiated first one, and then two, criminal contempt proceedings in August and September 1992. (Civil Action Nos. 92–K–1416, 92–K–1763). A grand jury indicted Mr. Winslow on three counts of willfully and intentionally disobeying the bankruptcy court's orders restraining him from interfering with the property of the estate. When Winslow executed an agreement promising to refrain from filing liens or taking other actions affecting the title to real property of the estate, the indictment was dismissed. *See* Agreement (dated Nov. 8, 1993). The Trustee strenuously objected to the dismissal, decrying it as another means by which the Winslows successfully have thwarted proper judicial process. *See* Chapter 7 Trustee's Response to Order to Show Cause (filed Dec. 14, 1993).

6. *See also* Order (Sept. 26, 1991) (bankruptcy court order appointing Glenn Merrick as counsel for Winslows (Document # 941)); Order (Oct. 16, 1991) (granting Merrick motion to withdraw and appointing Michael Katch as counsel for debtors (# 958)); Winslows' Objection to Appointment of Bankruptcy Attorney Michael Katch (filed Oct. 25, 1991) (requesting appointment of criminal attorney); Certification to District Court for Further Proceedings (filed Dec. 19, 1991) (detailed explanation of difficulty in appointing counsel acceptable to debtors and certifying issue to district court); Order of Reference to Magistrate Judge (filed April 29, 1992, *nunc pro tunc* ) (referral "for the purpose of appointing counsel from the available C.J.A. [Criminal Justice Act] list" to represent Winslows); Minute Order (filed April 24, 1992) (appointing Martha Horwitz to represent Winslows); Minute Order (filed May 18, 1992) (denying Winslow's Motion to Permit Winslows to Seek an Attorney Beyond the List of Lawyers on the Criminal Justice Act List); Order of United States Magistrate Judge (filed Sept. 8, 1992) (describing history of efforts to appoint counsel and finding Winslows "voluntarily, knowingly, and intelligently waived their right to appointed counsel and have chosen to represent themselves with the aid of advisory or standby counsel").

the contempt orders at issue.[7] Rule 9033 provides for "*de novo* review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made." Because the facts surrounding the issuance of the contempt orders essentially are undisputed, I saw no need for additional evidence and determined to conduct my review upon the record. *See* Minute Order (filed Oct. 26, 1992) (advising parties that no discovery will be permitted nor additional evidence taken on the issues of contempt). In exercising this review, I take judicial notice of the bankruptcy court's records and files, as well as those of this court resulting from the many appeals the debtors have taken from the bankruptcy court's rulings in 89 B 00247 E. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) (court properly may take judicial notice of its own records and those of other courts).

## B. *Merits*

The issue on review is whether the bankruptcy court's proposed findings of fact and conclusions of law in support of its contempt orders should be adopted as final. *See* Bank.R. 9033(d). Instead of addressing the proposed findings and conclusions, however, Winslow asserts the orders are void because the bankruptcy court (1) lacked jurisdiction to issue them because Winslow should have been granted a new trial in the Morgan County case; (2) lacked authority to incarcerate anyone; (3) deprived him of a "meaningful" hearing by failing to comply with the procedures set forth in Bankruptcy Rule 9020(b); (4) issued them after Judge Matsch granted Winslow's *habeas corpus* petition when Winslow was incarcerated in earlier contempt proceedings;[8] and (5) the Trustee herself was in "contempt of Congress" for initiating groundless contempt proceedings in violation of her 11 U.S.C. § 704 duty of impartiality. Winslow also contends the contempt proceedings were barred by the statute of limitations. Each of these arguments is without merit.

■ The first assertion has been addressed and rejected repeatedly and will not be revisited here. *See* Section (I), *supra.*

---

**7.** This was based on the bankruptcy court's concern over the uncertainty in the law regarding whether contempt actions were "core" proceedings under 28 U.S.C. § 157(b)(2) and thus subject to final determination and judgment by the bankruptcy court, or whether they were "non-core" proceedings under § 157(c)(1) susceptible to judgment only by the district court after *de novo* review. After a thorough analysis of the applicable law, the bankruptcy court determined it was bound to resolve the matter as a non-core proceeding subject to review under Rule 9033. *See* Findings and Orders on Order to Show Cause (Dec. 4, 1990) at 1–6 (citing Order, 90–M–1432 (filed Oct. 25, 1990), *In re Skinner*, 917 F.2d 444 (10th Cir.1990), and *Granfinanciera v. Nordberg*, 492 U.S. 33, 54–58, 109 S.Ct. 2782, 2797–99, 106 L.Ed.2d 26 (1989)). I agree with the bankruptcy court that while the issue is far from clear, both *Skinner* and *Granfinanciera* suggest that in enacting 11 U.S.C. § 105(a), Congress intended to authorize bankruptcy judges to adjudicate civil contempt proceedings to final judgment. *See Courtesy Inns, Ltd., Inc. v. Bank of Santa Fe*, 40 F.3d 1084, 1089 (10th Cir.1994) (§ 105 imbued bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) to sanction conduct abusive of the judicial process).

I note that in *Skinner*, the Tenth Circuit concluded that "[c]ivil contempt proceedings arising out of core matters are themselves core matters."

917 F.2d at 448. The matters out of which the Winslows' contempt here arose were "core" matters on which the bankruptcy court may enter judgment. Resolution of the "core"/"non-core" question, however, is left for another day, and I will review the contempt orders at issue in accordance with Rule 9033. *See In re Steele Cattle*, 39 F.3d 1192 (Table), 1994 WL 596627 at **3 (10th Cir.1994) (unpublished disposition) (declining to rule on "core"/"non-core" issue under similar circumstances).

**8.** Before the hearings presently before me for review, Judge Matheson conducted another hearing on the Trustee's first motion for contempt. That hearing resulted in an order dated July 24, 1990, which found the Winslows in contempt and required them to turn over assets to the Trustee. The Winslows refused and Mr. Winslow was ordered incarcerated. Incarceration was not ordered as to Mrs. Winslow because of her health. Mr. Winslow initiated *habeas corpus* proceedings, and his incarceration was set aside on grounds the bankruptcy court failed to provide separate written notice of the hearing as required by Bankruptcy Rule 9020. *See* Order, 90–M–1432 (Oct. 25, 1990). A second hearing after proper notice was held on November 27, 1990, culminating in the December 4, 1990 contempt order at issue.

722

The second was rejected by the Tenth Circuit in *Steele Cattle, Inc. v. Crist,* when it found no error in the bankruptcy court's conclusion that incarceration was needed to coerce debtors' compliance with reorganization plan. 1994 WL 596627, **1–2 (10th Cir.1994) (unpublished disposition) (citing *In re Skinner,* 917 F.2d at 447; *Commercial Banking Co. v. Jones,* 148 B.R. 353, 359 (M.D.Ga.1992); *In re Duggan,* 133 B.R. 671, 672 (Bankr.D.Mass.1991)).

■ With respect to the lack of "meaningful" hearing under Rule 9020, Winslow does not specify how Rule 9020 was violated. He states there was no hearing, but this clearly is belied by the record. He states he was denied permission to call himself or others as witnesses, but Rule 9020 does not require such permission be given. With respect to the effect of Judge Matsch's October 1990 order granting Winslow's *habeas corpus* petition, Winslow's release was premised on the bankruptcy court's failure to provide separate written notice of the contempt hearing as required by Rule 9020. When the bankruptcy court issued its Order to Show Cause on November 2, 1990, this procedural defect was cured and the resulting contempt orders are not void under the October ruling.

■ Winslow's allegation that the Trustee is in "contempt of Congress" is specious and has no bearing on the contempt issues before me. Winslow's assertion that the contempt proceedings were time-barred is premised on a misapprehension of the U.S. Attorney's November 10, 1993 Status Report in 90–K–2245. In that report, the U.S. Attorney opined that the 1992 *criminal* contempt proceedings against Winslow were untimely under the one year statute of limitations set forth in 18 U.S.C. § 3285. *See* n. 5, *supra.* The *civil* contempt proceedings being reviewed here are not subject to § 3285 and were initiated as soon as it became clear Winslow would not turn over his assets to the Trustee.

Turning to the Findings and Conclusions on Orders to Show Cause at issue, I note Winslow does not deny that despite the bankruptcy court's explicit May 7, 1990 orders, he has refused to turn over the $250 in water fees, other monies from his checking accounts, or copies of his tax returns. Nor does Winslow deny that he received and cashed checks for the payment of rent on commercial property of the estate. Moreover, Winslow acknowledges filing *lis pendens* and other actions challenging the ownership of certain property of the estate, which actions interfered with the Trustee's ability to administer the estate.

■ Winslow's only response is that his retention of the $250 in water fees and the rent received on pastureland was "inadvertent" and done without the requisite "intent to be contemptuous." Winslow Resp. Trustee Opening Br. at 6. As for his refusal to comply with other aspects of the bankruptcy court's orders, Winslow asserts his actions were justified.

Winslow's second assertion precludes the first. Winslow knew he had been ordered to turn over the property and monies at issue but simply refused to do so. This is precisely the conduct over which Congress gave bankruptcy courts contempt authority under 11 U.S.C. § 105. *See Skinner,* 917 F.2d at 447, 449 (to be held in civil contempt, a court must find the party violated a specific and definite court order and the party had notice of the order). That Winslow meant no disrespect and thinks his refusals justified is immaterial. *See id.; see also In re Walters,* 868 F.2d 665, 668 (4th Cir.1989) (since the purpose of civil contempt is remedial, it matters not with what intent the prohibited act was done). The fact the justifications offered have been repeatedly asserted and repeatedly rejected makes Winslow's refusals all the more contemptuous.[9]

I conclude the record fully supports the bankruptcy court's findings of fact and conclusions of law in support of its December 4,

---

9. For example, Winslow claims his retention of income and expenditures related to his property were justified because the conversion of the bankruptcy proceedings from Chapter 11 to Chapter 7 was void and his actions were necessary to preserve the value of his assets while he developed his reorganization plan. As set forth fully above, the conversion from Chapter 11 to Chapter 7 was not void.

1990 and July 24, 1991 contempt orders. Winslow acted to divert and use property of the estate knowing the bankruptcy court had ordered him not to. Accordingly,

IT IS ORDERED that the bankruptcy court's Findings and Orders on Order to Show Cause dated December 4, 1990 is ADOPTED as a final order of this court.

FURTHER ORDERED that the bankruptcy court's Findings and Orders on Order to Show Cause dated July 24, 1991 is ADOPTED as a final order of this court.

FURTHER ORDERED that Winslow shall appear before this court on Wednesday, September 27, 1995 at 4:30 p.m. and show the court by a signed stipulation of the Trustee or by other satisfactory evidence that he has complied with the bankruptcy court's orders of May 7, 1990 such that this court may find he has purged himself of his contempt. Failing such, Winslow shall be bound over to the United States Marshal to be incarcerated in appropriate federal facilities until such time as he evidences his willingness and intent to purge himself of his contempt.

FURTHER ORDERED that Winslow shall be assessed the reasonable costs and expenses, including attorney fees, incurred by the estate in seeking enforcement of the bankruptcy court's orders of May 7, 1990. The court ADOPTS the procedure for determining the amount of the fees and expenses so incurred set forth in the bankruptcy court's July 24, 1991 Findings and Orders on Order to Show Cause.

FURTHER ORDERED that no motion for reconsideration or for other postjudgment relief, however denominated, will be accepted for filing without the court's permission. To obtain permission, Winslow must first file a separate motion for leave to file a request for postjudgment relief. The motion for leave shall (1) include a copy of the proposed motion for postjudgment relief; (2) identify the specific procedural rule upon which postjudgment relief is based; (3) specify each factual finding or legal conclusion for which reconsideration is desired; and (4) contain a certification that the arguments presented in the proposed motion for post-

judgment relief are germane to the action and have not been raised or ruled upon in this action or in any other proceeding in which Winslow was a party. A motion for postjudgment relief not accompanied by a proper motion for leave to file shall be stricken.