**In re WESTERN PACIFIC AIRLINES, INC., EIN 86–0758778, Debtor.**

**Bankruptcy No. 97–24701–SBB.**

United States Bankruptcy Court, D. Colorado.

March 24, 1998.

Christian Onsager and Michael Pankow, Denver, CO, for Western Pacific Airlines, Inc.

Leo Weiss, Denver, CO, for U.S. Trustee.

John Young, Block, Markus and Williams, L.L.C., Denver, CO, for Official Committee of Unsecured Creditors.

Dennis M. O'Dea, New York City, for BF Goodrich Aerospace.

David Brennan, Denver, CO, for Smith Management.

Douglas Jessop, Denver, CO, for City and County of Denver.

Frances Cetrulo, Denver, CO, for Sunrock Aircraft Corp. Ltd.

Paul Rubner, Denver, CO, for CCA Financial, Inc., KG Aircraft Leasing Co. Ltd., and Mercury Air Group, Inc.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on March 10, 1998, on (1) the Motion to Convert to Chapter 7 filed by the Official Committee of Unsecured Creditors on February 9, 1998, as amended on February 17, 1998; (2) the United States Trustee's ("U.S. Trustee" herein) Objection to Unsecured Creditors' Committee's Motion to Convert and Request for Dismissal filed on February 18, 1998; and (3) the Debtor–in–Possession Western Pacific's Objection to Amended Motion to Convert to Chapter 7 filed on February 19, 1998. The Court, having reviewed the file and being advised in the premises, makes the following findings of fact, conclusions of law, and orders.

## INTRODUCTION

The Parties to this dispute—the Debtor–in–Possession airline and its secured post-petition lenders on one side and the Committee and the U.S. Trustee on the other—disagree over the proper disposition of the within Chapter 11 case. The Committee and U.S. Trustee maintain that the case should be dismissed, or at the very least converted to Chapter 7, now that the Debtor–in–Possession has ceased all flight operations, has no ability to effectuate a plan of reorganization, and is liquidating all of its assets primarily for the benefit of its post-petition lenders. Conversely, the Debtor and its secured post-petition lenders contend that dismissal of this case at this time would result in a chaotic free-for-all, resulting in loss of value to its assets and disruption of the ongoing orderly liquidation presently being administered by the Debtor and funded by the secured post-petition lenders. The Debtor also maintains that conversion would be disruptive to the present liquidation and would,

ultimately, be far more costly than allowing the Debtor to continue its own liquidation.

## ISSUE

The issue before the Court is, given the continuing diminution of assets of the estate and the inability of the Debtor to rehabilitate or reorganize, should this Debtor–in–Possession liquidating Chapter 11 case be dismissed or, in the alternative, converted to Chapter 7, pursuant to 11 U.S.C. § 1112(b).

## FINDINGS OF FACT

Western Pacific Airlines, Inc. filed for relief under Chapter 11, Title 11 of the United States Code on October 6, 1997. At the time of filing, the Debtor–in–Possession operated a fleet of 18 leased Boeing 737–300 aircraft from ten lessors.

On or about December 3, 1997, this Court approved a credit agreement pursuant to 11 U.S.C. §§ 364(c)(1) and 364(d) between the Debtor–in–Possession and Energy Management Corporation and Sundance Venture Partners, L.P. II (collectively, the "DIP Lenders") wherein the Court authorized the Debtor to obtain post-petition financing up to the principal amount of $30 million. As security for the financing, the DIP Lenders were given a superpriority administrative expense claim, a first priority lien on all unencumbered assets, and, perhaps most important and valuable, a first priority senior security interest in and lien upon the proceeds of any kind resulting from any disposition of any aircraft leasehold interest of the Debtor. The DIP Lenders immediately began to disburse funds to the Debtor–in–Possession and a total of $23 million was disbursed over the next seven weeks allowing the airline to continue its flight operations.

Although the exact date is disputed by the parties, during the last week of January 1998, the DIP Lenders announced their decision to curtail funding of the Debtor–in–Possession, wherein all operating and future expenses to be paid by the Debtor would have to first be approved by the DIP Lenders on an item-by-item, day-by-day basis. On February 4, 1998, the Debtor ceased all flight operations and commenced a liquidation.

The Committee promptly filed a Motion to Convert the case to Chapter 7, arguing that (1) the Debtor was continuing to incur administrative expenses which might not be paid; and (2) it appeared to the Committee that the Debtor's Estate was being administered solely for the benefit of the DIP Lenders. Approximately one week later, the Committee amended its Motion to Convert to argue alternatively, and primarily, that dismissal rather than conversion is in the best interest of unsecured creditors and the Estate. The Committee, the U.S. Trustee and virtually all interested parties agree that, given the DIP Lenders comprehensive superpriority claim and their first priority lien position on virtually all of the Debtor's valuable assets—particularly its aircraft leasehold rights—there is no likelihood of a return on creditors' claims or costs incurred in the liquidation.

The U.S. Trustee filed an Objection to the Committee's original Motion to Convert. The main thrust of the U.S. Trustee's Objection is that dismissal is preferable to conversion due to the Debtor's inability to generate any funds—considering the superpriority claim of the DIP Lenders—to administer this case under Chapter 7.

The Debtor–in–Possession also objected to the Committee's Motion contending that such a Motion is premature and that a change in Debtor's management and control would be extremely disruptive to the ongoing orderly liquidation of the airline.

On February 19, 1998, this Court conducted a preliminary hearing on the Committee's Amended Motion to Convert. After hearing the parties' arguments and considering counsels' offers of proof, the Court continued the matter to March 10, 1998.

At the March 10th hearing, the Committee did not call any witnesses or introduce any exhibits in support of its Motion. Instead, as an offer of proof, the Committee offered the particulars of the deteriorating status of the Debtor, the declining asset base and loss of all operating income of the Debtor, and the "control" exercised by and the benefit derived by the DIP Lenders and other problematic features of the liquidation case to date. The Debtor, also as an offer of proof, offered

the testimony of George Leonard, the Debtor's Chief Financial Officer. If called to testify, the Debtor proffered that Mr. Leonard would testify regarding (1) Debtor's ongoing expenses and continuing payment of same by the DIP Lenders; (2) Debtor's independent fiduciary duties, coupled with Debtor's close and continuing cooperation with its DIP Lenders; (3) the ongoing orderly liquidation of the Debtor's assets; and (4) possible or potential avoidance actions available to the Debtor–in–Possession. The Debtor also offered a general recital of the its ongoing liquidation tasks including (a) assembling, cataloguing, storing, and, where appropriate, distributing, financial information and business, aircraft records; (b) turnover of personal property including leased equipment and office-customer service space; (c) "shopping" of aircraft leasehold interests for the benefit of the DIP Lenders; and (d) managing and concluding regulatory agency, employee, tax and financial operations and "paperwork."

At the conclusion of the hearing, the Court denied the Committee's Motion, without prejudice, stating that dismissal or conversion, *at this time*, would (a) be premature; (b) be disruptive to the ongoing orderly liquidation; and (c) deprive the DIP Lenders of a forum and structured framework within which to protect and recover on their collateral.

### DISCUSSION

Given the status of this case, the Debtor–in–Possession's continuing efforts to effectu-

ate an orderly liquidation of its assets, and the bargained-for rights and expectations of the DIP Lenders, this Court is unable to conclude that the case should be dismissed or converted at this time.

Dismissal or conversion to a liquidation proceeding under Chapter 7 is governed by 11 U.S.C. § 1112(b).[1] Section 1112(b) permits a court, at the request of any party-in-interest, to dismiss a case or convert it to Chapter 7, whichever is in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b). Such a dismissal or conversion under Section 1112(b) must, however, be "for cause." *Id.* Section 1112(b) includes a nonexclusive list of examples which may constitute cause. *In re Winslow*, 123 B.R. 641, 643 (D.Colo.1991). The list includes, for purposes of this case, continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation and inability to effectuate a plan. 11 U.S.C. § 1112(b)(1)-(2).[2] Both of those circumstances are manifestly present in this case.

▮▮▮ When presented with a request for dismissal or conversion under Section 1112(b), case law and congressional intent make it clear that a bankruptcy court has broad discretion to either grant or deny such relief. The Tenth Circuit has stated in unequivocal terms that a bankruptcy court is to be afforded broad discretion under Section 1112(b). *See, Small Business Administra-*

1. Section 1112(b) provides as follows:
   (b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
   (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
   (2) inability to effectuate a plan;
   (3) unreasonable delay by the debtor that is prejudicial to creditors;
   (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
   (5) denial of confirmation of every proposed plan and denial of a request made for addi-

   tional time for filing another plan or a modification of a plan;
   (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
   (7) inability to effectuate substantial consummation of a confirmed plan;
   (8) material default by the debtor with respect to a confirmed plan;
   (9) termination of a plan by reason of the occurrence of a condition specified in the plan;
   (10) nonpayment of any fees or charges required under chapter 123 of title 28.

2. Since the Court has not fixed a time by which the Debtor must file an amended Plan, it is unnecessary to consider Section 1112(b)(4). *See, In re Alves Photo Service, Inc.*, 6 B.R. 690, 692 (Bankr.D.Mass.1980).

*tion v. Preferred Door Company, Inc.,* 990 F.2d 547, 549 (10th Cir.1993); *Hall v. Vance,* 887 F.2d 1041, 1044 (10th Cir.1989). "[T]he existence of one or more grounds for conversion as set forth in 11 U.S.C. § 1112(b) does not compel such action. The bankruptcy judge, in his sound discretion, must make the ultimate decision." *In re L.S. Good & Co., et al.,* 8 B.R. 315, 318 (Bankr.N.D.W.Va.1980).

Relying on the Court's broad discretion, the Committee urges the Court to dismiss or, alternatively, convert this case for "cause" under Section 1112(b). Each of the reasons advanced by the Committee as "cause" and the treatment of those reasons follows.

### Inability to Pay Administrative Expenses

■ Initially, the Committee argued that the case should be dismissed "for cause" because the Debtor is continuing to incur significant administrative expenses with no assurance of payment to administrative claimants. The Debtor countered that the DIP Lenders are paying all reasonable administrative expenses associated with the ongoing liquidation. At hearing, the Committee conceded that the DIP Lenders have been paying, and have committed to continue paying, administrative expenses accruing after the Debtor ceased flight operations on February 4, 1998. The Court can only conclude that expenses of the liquidation are being, and will continue to be, paid by the DIP Lenders. There is no evidence or expectation that costs of liquidation that accrue during the liquidation will not be paid. Indeed, the DIP Lenders are highly motivated to pay Estate expenses in order to facilitate and enhance their ability to recover value from their collateral.

### Debtor's Negative Cash Flow

The Committee also contends that the Debtor's negative cash flow position since entry of the order for relief satisfies the continuing loss to or diminution of the estate factor of Section 1112(b)(1). The Debtor did not dispute that it has had a negative cash flow since entry of the order for relief.

■ In any Section 1112(b) determination, the Court must find both a "continuing loss to or diminution of the estate" and an

"absence of a reasonable likelihood of rehabilitation" or "cause." *In re Tolco Properties, Inc.,* 6 B.R. 482 (Bankr.E.D.Va.1980). As suggested in Collier, "if the debtor has a negative cash flow after entry of the order for relief in the chapter 11 case, the first of the two elements of Section 1112(b)(1) is satisfied." 5 Collier on Bankruptcy, P 1112.03(2)(c)(i) (15th ed.1979). In the instant case, there is no real dispute, nor can there be, that the Debtor has had a negative cash flow since the filing of this case and that the same will continue now that all flight operations have ceased. This Court, however, does not believe that inquiry into "continuing loss to or diminution of the estate" must end there.

The concern in a situation of continuing loss to or diminution of the estate must focus on the effect it will have on unsecured creditors and equity holders. In the within case, considering the DIP Lender's superpriority administrative expense claim and security interest in virtually all of the assets of the Debtor, the unsecured creditors and equity holders will not receive a distribution from the Estate whether the case is a Chapter 11, a Chapter 7, or under state law. "[T]here is no estate as far as the unsecured creditors and equity holders are concerned." *U.S. Trustee v. GPA Technical Consultants, Inc.,* 106 B.R. 139, 141 (Bankr.S.D.Ohio 1989). Therefore, as in the *GPA* case, keeping this case in Chapter 11 does not harm the unsecured creditors who will receive nothing in any situation. The "continuing loss to or diminution of the estate" factor, although present, does not weigh as heavily in the present situation as it might in one where the unsecured creditors are being adversely affected by the Debtor's current actions. Moreover, all costs of this liquidation are being paid by the DIP Lenders.

### Inability to Reorganize

■ The Committee strenuously argues for dismissal based on the Debtor's inability to reorganize. The parties do not dispute that the Debtor does not have the funds available to effectuate a reorganization and that the Debtor is currently liquidating its assets. The Debtor has ceased all flight operations and is in the process of liquidating

all of its assets. The Committee, in support of its request for dismissal, directs the Court's attention to *In re Mazzocone,* 183 B.R. 402 (Bankr.E.D.Pa.1995) where the court held that

> [O]nly when a Chapter 11 debtor has no intention or ability to reorganize or perform its own liquidation or otherwise fulfill pertinent bankruptcy obligations should a debtor not be permitted to remain in bankruptcy simply in order to enjoy the protections of the automatic stay.

*Id.* at 412.

Here, however, the holding in *Mazzocone* is not dispositive of the dismissal—conversion decision. In the instant case the Debtor may not have an ability to reorganize, but, as opposed to *Mazzocone,* it does have an intention to perform its own liquidation and has, in fact, been doing so in an orderly and effective manner. The Court is more persuaded, in the present situation, by the case of *U.S. Trustee v. GPA,* where the debtor-in-possession wanted to liquidate its business and pursue avoidance actions on its own. The *GPA* court denied a motion to dismiss or convert and allowed the debtor to continue liquidating its business. Also instructive is the case of *In re Matter of W.J. Rewoldt Co.,* 22 B.R. 459, 462 (Bankr. E.D.Mich.1982), where the Court held that if reorganization was a viable option when the debtor filed its bankruptcy petition, conversion should not be ordered when, even though reorganization is no longer a viable option, liquidation would proceed more expeditiously and less expensively under the control of the debtor. As stated by one commentator, "bringing in new parties and attorneys in the middle or at the end of the reorganization process to begin a liquidation in a Chapter 7 proceeding is generally not the most practical, efficient, expeditious, or most effective manner of liquidating estates." *Anderson and Wright, Liquidating Plans of Reorganization,* 56 Am.Bankr.L.J. 29, 47 (1982). This is particularly true and applicable in an airline liquidation.

In the instant case, there is no question that the Debtor intended to reorganize when it filed its Petition and that such an option was viable if the Debtor secured post-petition financing, which it did. Now, following cessation of operations, reorganization is no longer a viable option. However, the Court is convinced that liquidation has and will proceed more expeditiously, more orderly and less expensively under the control of the Debtor, its existing management and senior staff, and funded by its DIP Lenders. If the case was converted, there would be (1) expenses associated with appointing a trustee and his/her attorneys; (2) disruption resulting from delay and change in personnel; (3) time and resources needed, but not available, to train or familiarize replacement management/employees; and (4) turmoil in the enormous and complex recordkeeping and information disbursal tasks required by the business, by the DOT and FAA, by airline lessors and pilots (flight and maintenance records, etc.). Further, if the case was dismissed, the orderly liquidation currently being administered by the Debtor would be disrupted and a chaotic, free-for-all would ensue. Additionally, the Debtor is in the process of locating, identifying and returning leased equipment to the appropriate lessors. The Debtor is also attending to such wind up issues as DOT and FAA compliance and passenger and employee matters which would likely be ignored if the case was dismissed.

### "Cause" under 11 U.S.C. § 1112(b)

█ Even though the Court finds merit in allowing the Debtor to continue liquidation procedures, it cannot be denied that the Committee has established "cause" under Section 1112(b) by showing that not only does the Debtor lack the ability to reorganize, but that it also has had a negative cash flow since the filing of this case. Such a showing is sufficient to satisfy the "for cause" element of Section 1112(b). "Once cause is established, [however,] the decision of whether or not to convert [or dismiss] is left to the discretion of the bankruptcy court based upon the best interest of the estate and the creditors." *In re Fraidin,* 188 B.R. 529, 532 n. 1 (D.Md.1995), *aff'd,* 110 F.3d 59 (4th Cir.1997).

### Best Interest of the Estate and Creditors

The Section 1112(b) element of best interest of the estate and the creditors necessarily

focuses in this case on the interests of the DIP Lenders, which have a superpriority administrative expense claim, a first priority lien on all unencumbered assets, and a senior security interest in and lien upon the proceeds of any kind resulting from any disposition of aircraft leasehold interests of the Debtor. Indeed, the Committee contends that, in reality, the DIP Lenders are directing all liquidation procedures and that the liquidation is being undertaken solely for the benefit of the DIP Lenders. In such a situation, the Committee alleges, there is no independent fiduciary representing all creditors. The Committee strenuously argues that the bankruptcy process is being abused by allowing the Debtor to continue conducting its own liquidation when the only entity actually benefitting from the liquidation is the DIP Lenders.

■ The Committee may well be correct in its allegation that any liquidation of assets by the Debtor is necessarily and solely for the benefit of the DIP Lenders. However, as aptly stated by the Court in *Trustee v. GPA,*

> Even if the only reason for the Chapter 11 in the instant case is to maximize the return to the secured creditor through the retention of the debtor-in-possession to collect and liquidate assets and to avoid prepetition transfers of the debtor, the interests of the secured creditor are legitimate interests to be taken into account in deciding whether to convert or dismiss a Chapter 11 case.

*Id.* at 142.

This line of reasoning was also accepted by the court in *In re Staff Investment Co.,* 146 B.R. 256 (Bankr.E.D.Cal.1993), in considering the best interest of creditors requirement of Section 1112(b). In considering whether the Chapter 11 case should be converted, the *Staff* court stated that

> There is no specific numerosity requirement inherent in Section 1112(b) best interest test. The interest of a single creditor with a large enough claim will suffice.

*Id.* at 261.

In the instant case, the Court cannot and will not ignore the bargained-for rights and interests of the DIP Lenders. The DIP Lenders entered into this case, as did other post-petition creditors, in the hope that the Debtor would effectuate a successful reorganization. At the same time, the DIP Lenders realized that such might not be the case and therefore they acquired specific and substantial rights and interests under 11 U.S.C. § 364 to protect their investment. Debtor-in-possession lenders and post-petition financiers depend on the Court and the integrity of the bankruptcy process to ensure that their rights are not ignored or summarily disposed of by the Court in the event a reorganization effort fails. This Court does not believe that it can undermine the trust of the DIP Lenders in this particular case, or set a precedent which would dissuade or preclude a future lender from extending credit under Section 364 to a debtor-in-possession. This Court will not set a precedent that could diminish or destroy DIP lenders confidence in bankruptcy courts and the Bankruptcy Code, and the protections afforded thereunder. As long as the debtor-in-possession lender acts responsibly and in good faith, then the bankruptcy court should retain a forum for the lender to try to protect its bargained-for rights and interests.

The Court agrees with the Committee that dismissal of the proceeding may ultimately be the correct disposition of the case considering the lack of funds available to administer a Chapter 7 estate. Indeed, the time for dismissal may be in the relatively near future. The Court, however, concludes that dismissal would be improper and premature at this time. Dismissal at this time would (a) disrupt the return of leased equipment; (b) cause problems with aircraft maintenance and recordkeeping; (c) create disarray with debtor's business records, pilot flying and employee personnel records; (d) increase costs of the liquidation; (e) possibly cause the DIP Lenders to immediately stop funding the costs of liquidation; (f) terminate or cause disruption of the bargained-for rights and interests of the DIP Lenders; (g) potentially cause the loss of any avoidance actions; and (h) cause the loss of the current framework that has been erected by the Debtor to effectuate an orderly liquidation. Considering these factors, it is in the best interests of

the DIP Lenders and other interested parties that the instant case not be dismissed at this juncture.

### CONCLUSION

For the reasons set forth above, this Court concludes that dismissal or conversion pursuant to 11 U.S.C. § 1112(b) is not warranted at this time. Even though the Committee and the U.S. Trustee established "cause" for dismissal or conversion under Section 1112(b) by showing that the Debtor lacked the ability to reorganize, that it has had a negative cash flow since the filing of the case, and that there is a continuing diminution of Estate assets, a dismissal or conversion, now, would not result in benefit to the Estate, or any other party.

### ORDER

Accordingly, it is

ORDERED that the Official Committee of Unsecured Creditors' Motion to Convert and Amended Motion to Convert are DENIED.